**VERNON J. ROCKLER AND CO., Inc., and Elof Norberg on behalf of themselves and on behalf of that class of all other persons who purchased stock in Graphic Enterprises, Inc. (a Minnesota corporation), subsequent to October 25, 1968, Plaintiffs,**

v.

**GRAPHIC ENTERPRISES, INC. (a Minnesota Corporation) et al., Defendants.**

**No. 4–70 Civ. 81.**

United States District Court,
D. Minnesota,
Fourth Division.

May 11, 1971.

Katz, Taube, Lange & Frommelt, by Steven Z. Lange and David B. Eide, Minneapolis, Minn., for plaintiffs.

Grannis & Grannis, by Patrick A. Farrell, So. St. Paul, Minn., for defendant Dunham.

Law offices of Jerome V. Blatz, by Stuart E. Gale, Minneapolis, Minn., for defendant Sticha.

Mackall, Crounse, Moore, Helmey & Holmes, by Roger V. Stageberg, Minneapolis, Minn., for defendants Marvin and Post.

Altman, Geraghty, Leonard & Mulally, by Alan W. Weinblatt, St. Paul, Minn., for defendant Lund.

Meagher, Geer, Markham & Anderson, by Mark N. Stageberg, Minneapolis, Minn., for defendant Haglund.

MacIntosh, Cairns & Commers, by Richard B. Allyn, Minneapolis, Minn., for defendant McLaughlin.

NEVILLE, District Judge.

Plaintiffs bring this suit on behalf of themselves and numerous absentee plaintiffs, to recover damages allegedly suffered in connection with the purchase or exchange of capital stock of defendant, Graphic Enterprises, Inc. (Graphic). The suit is based upon alleged violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and S.E.C. Rule 10b–5, 17 C.F.R. § 240.10b–5. This court has jurisdiction under 15 U.S.C. § 78aa. In essence, plaintiffs complain that defendants employed a device, scheme or artifice to defraud purchasers of Graphic stock, by filing false and misleading registration materials with the Securities Division of the State of Minnesota, and by subsequently requesting

and obtaining an authorization for secondary trading in such securities.[1]

The registration materials were filed in connection with Graphic's application for registration of 100,000 shares of common stock, some 54,000 of which apparently were sold to the public pursuant to an authorization dated November 5, 1968. On about March 24, 1969, plaintiff Elof Norberg purchased 100 shares at $2.30 per share, all of which he alleges he still holds. On May 20, 1969, the Minnesota Securities Division authorized secondary market trading in the 51,275 Graphic shares represented to be issued and outstanding at that time. Over a period extending from about June 3, to June 18, 1969, plaintiff Vernon J. Rockler, Inc. (Rockler) a stock broker-dealer purchased 84,000 shares, 2,000 of which were re-sold by it on or about June 30, 1969. Both plaintiffs allege reliance upon the registration materials, and plaintiff Rockler further alleges reliance on certain oral representations made by Graphic's officers in connection with their request, on or about May 20, 1969, that Rockler undertake to "make a market"

in Graphic stock through local over-the-counter trading.

 Plaintiffs move, pursuant to Rule 23, Fed.R.Civ.P., for an order permitting the action to be maintained as a class action. Plaintiffs seek to represent "that class of all other persons who purchased shares of common stock of Graphic subsequent to October 25, 1968, either from Graphic directly or in the over-the-counter market." Although it is a vital prerequisite under Rule 23,[2] the court notes that defendants have addressed no specific objections to the adequacy of plaintiffs' class definition. The court is satisfied that the definition offered by plaintiffs provides a sufficient basis upon which to determine the scope of the class and the propriety of permitting plaintiffs to represent all or part of it.[3]

 Nor do defendants contest the status of either of the named plaintiffs as class members.[4] Both plaintiffs are afforded the right, express or implied, separately to seek private redress for the securities law violations they allege. Whether or not a class action is the prop-

---

1. On February 3, 1969, Graphic filed an amended offering circular with the securities division which plaintiffs contend failed to remedy the material misrepresentations and omissions contained in the original.

2. "By definition, an essential prerequisite of a class action is the existence of a class." 3A Moore's Fed.Prac. ¶ 23.04 at 23–251 (2d ed. 1969). The class must be defined if the court is to determine those who will receive notice [23(c) (2)], those who will share in recovery, and those who will be bound by the judgment [23(c) (3)]. The definition of the class is, of course, of vital importance in view of the *res judicata* effect of the judgment. See Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

3. It is not unusual for a securities fraud suit to be brought on behalf of purchasers of defendant's securities within a given period of time. In Fischer v. Kletz, 41 F.R.D. 377, 384 (S.D.N.Y.1966), the court stated that the class had been defined with sufficient precision to include all individuals who bought securities dur-

ing a period when allegedly false and misleading financial statements were issued and outstanding.

4. The purpose of this threshold requirement is to ferret out officious intermeddlers who personally do not possess the substantive right to litigate the claims of statutory violations sought to be litigated on behalf of others. See Greater Iowa Corp. v. McLendon, 378 F.2d 783, 789 (8th Cir. 1967); Erling v. Powell, 298 F.Supp. 1154 (S.D.S.D.1969); Cf. Lesch v. Chicago & E. I. R. R., 279 F.Supp. 908, 911 (N.D.Ill.1968). Plaintiff Rockler's alleged status as an "underwriter" or "dealer" as defined in §§ 2(11) and (12) of the 1933 Securities Act, 15 U.S.C. §§ 77b(11) and (12), is not pertinent to the present issue since such persons may recover from their immediate sellers pursuant to §§ 12(1) and (2) of the 1933 Act, 15 U.S.C. §§ 77l(1) and (2), notwithstanding their liability to those purchasing from them. *But See* Slack v. Stiner, 358 F.2d 65, 70 (5th Cir. 1966); Horwitz v. Panhandle E. Pipe Line Co., 293 F.Supp. 1092, 1093 (W.D.Okl., 1968).

er procedure for obtaining such redress, it is clear that plaintiffs are "real parties in interest" with respect to their claims.[5]

The above are but threshold issues. Plaintiffs strongly assert that they meet all of the requirements styled "prerequisites to a class action" under 23(a), and further allege that the action falls within the criteria set out in subdivision (3) of 23(b).[6] Defendants conversely argue that plaintiffs have failed to meet their burden to show affirmatively that each of the applicable Rule 23 requirements is satisfied.

### (a) (1) *Impracticality of Joinder*

█ Rule 23(a) (1) precludes any class action unless, "the class is so numerous that joinder of all members is impracticable." The alleged class herein is comprised of all those who purchased Graphic stock subsequent to October 25, 1968. There appears to be agreement between the parties that some 54,400 shares were purchased during the relevant period. In addition plaintiffs have submitted a list identifying 305 individual purchasers whose financial interests range from $23 to $11,751. Defendants contend that all but one of the listed persons are secondary purchasers, thus opening the door to speculation as to the number and whereabouts of any original or intervening purchasers who may qualify for class membership. However, the failure precisely to enumerate and identify the entire class is not fatal under 23(a) (1).[7]

█ It would seem to be undisputed that approximately 83% of the purchasers listed by plaintiffs reside in the Minneapolis and St. Paul metropolitan area. Nearly all of the remaining 17% reside in out-state areas within the state of Minnesota. Presuming a similar distribution of unlisted purchasers, it would appear that joinder, at least permissive joinder, would indeed be possible.[8] However, the term "impracticable" within the meaning of Rule 23(a) (1) does not refer to impossibility, but only to difficulty or inconvenience. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913–914 (9th Cir. 1964); Williams v. Humble Oil & Refining Co., 234 F. Supp. 985, 987 (E.D.La., 1964); Union Pacific R. R. Co. v. Woodahl, 308 F.Supp. 1002, 1008 (D.Mont.1970). Inconvenience to the court as well as to the absentees some of whom have only a $23 interest is a proper factor for the court's consideration. Acknowledging the relevance of geographic concentration among potential class members, *see*, Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968); Hirschi v. B. & E. Securities, Inc., 41 F.R.D. 64, 69 (D.Utah, 1966); *rev'd on other grounds sub nom.* Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), the

---

5. Rule 17(a), Fed.R.Civ.P., requires that, "Every action shall be prosecuted in the name of the real party in interest * *." A real party in interest has been defined as "the party who, by the substantive law has the right sought to be enforced." 3A Moore's Fed.Prac. ¶ 17.07 at 221 (2d ed. 1969); *accord,* 2 Barron & Holtzoff § 482, at 7 (1961).

6. Since plaintiffs do not purport to fall within Rule 23(b) (1) (A) and (B), or 23(b) (2), no substantial objections to a class action under such provisions have been offered by defendants. In any case the court is of the opinion that subdivisions (1) and (2) of Rule 23(b) do not apply to this case.

7. Class actions have been allowed where it was alleged that at least a minimum number of investors were involved, see Fidelis Corp. v. Litton Indus., Inc., 293 F.Supp. 164, 170 (S.D.N.Y.1968), or that the potential members of the class, bought, owned or sold at least a specified number of shares. See Cannon v. Texas Gulf Sulphur Co., 47 F.R.D. 60, 63 (S.D.N.Y. 1969); Jacobs v. Paul Hardeman, Inc., 42 F.R.D. 595, 598 (S.D.N.Y.1967); Compare, Reichlin v. Wolfson, 47 F.R.D. 537, 540 (S.D.N.Y.1969); Herbst v. Able, 278 F.Supp. 664, 668 (S.D.N.Y.1967).

8. This would require a separate motion and petition to intervene under Rule 24 of the Federal Rules by each of the 305 or more individuals.

court nevertheless is persuaded that to allow the present litigation to proceed by way of individual intervention would pose a substantial if not an intolerable burden on the court and its facilities. Where, as here, the number of absentees ascends into the hundreds:

> "[P]roblems of management and administration would be rendered extremely cumbersome and difficult by joinder of all absentee members, service of separate pleadings, entry of separate orders as to each joinder, etc. Joinder would tend to result in great multiplicity, one of the major evils Rule 23 procedures seek to prevent."

Minnesota v. United States Steel Corp., 44 F.R.D. 559, 566 (D.Minn.1968). See also Swanson v. American Consumer Indus., Inc., 415 F.2d 1326, 1333 (7th Cir. 1969).

(a) (2) *Common Questions of Law or Fact*

The second prerequisite to class action set out in Rule 23(a) is that there be common questions of law or fact. The Rule "does not require that all the members of the class be identically situated, if there are substantial questions either of law or fact common to all." Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964). It cannot be disputed that the claims of both the named plaintiffs raise questions common to the class consisting of at least (1) the fact of the alleged misrepresentations and omissions, (2) their materiality, and (3) the general liability of the named defendants for such misstatements or omissions as are ultimately proven. None of defendants' objections with respect to the commonality requirement of 23(a) (1) negate or disturb this "common nucleus of operative facts." Weiss v. Tenney Corp., 47 F.R.D. 283, 293 (S.D.N.Y. 1969); Mersay v. First Republic Corp.

of Amer., 43 F.R.D. 465, 468 (S.D.N.Y. 1968); Dolgow v. Anderson, 43 F.R.D. 472, 489 (E.D.N.Y.1968); Siegel v. Chicken Delight, Inc., 271 F.Supp. 722, 726 (N.D.Cal.1967). What defendants have denominated objections to the applicability of 23(a) (2), are more properly addressed to the requirement under 23(b) (3) that the common questions of law and fact predominate over questions affecting only individual members of the alleged class.[9]

(a) (3) *Plaintiffs' Claims are typical of the Class*

Under the former Rule 23 the issue of plaintiffs' suitability as a representative was covered by a single requirement that the named representative be such as will "fairly insure the adequate representation of all." Fed.R.Civ.P. 23(a), 28 U.S.C. App. (1964). The meaning of the separate requirement under amended Rule 23(a) (3) that plaintiffs' claims be "typical of the claims * * * of the class," is not explained in the accompanying notes of the advisory committee. See, Advisory Committee Notes, 39 F.R.D. 69, 99–107. It has, however, been suggested that this new provision contains a cryptic reference "to the motion, still valid under the amended rule, that the representative must not have interests which conflict with those he purports to represent." 2 Barron & Holtzoff, Federal Prac. & Proc., 75 n. 3 (Supp. 1967); See, Mersay v. First Republic Corp. of Amer., *supra,* 43 F.R.D. at 468. The requirement that the representative's interests be free of conflict with those of the absentees has in turn been held to entail, (1) the presence of interests coextensive with the interests of the class, See e. g., Dolgow v. Anderson, *supra,* 43 F.R.D. at 494; Minnesota v. United States Steel Corp., *supra,* 44 F. R.D. at 566; 3B Moore's Fed.Prac. ¶

---

9. Aside from serving the mechanical function of embodying the first chronological step to be taken by the court, the express requirement of (a) (2) is arguably superfluous insofar as the existence of common questions is implicit in a finding that a suit is definable as a (b) (1), (2) or (3) class action. See 3B Moore's Fed.Prac. ¶ 23.06–2 at 23–301; Wright, Federal Courts, 2d ed. 1969 at 171 n. 14.

23.07(1) at 23–351 (2nd ed., 1969), or (2) the absence of representative interests which are antagonistic to the interests of the absentees. *See e. g.,* Hansberry v. Lee, 311 U.S. 32, 44–45, 61 S.Ct. 115, 85 L.Ed. 22 (1940) ; Weiss v. Tenney Corp., *supra,* 47 F.R.D. at 293; Mersay v. First Republic Corp. of Amer., *supra,* 43 F.R.D. at 468; Philadelphia Elec. Co. v. Anaconda Amer. Brass Co., 43 F.R.D. 452, 463–464 (E.D.Pa., 1968) ; *see generally,* 3B Moore's *supra* ¶ 23.07 (3).[10]

Defendants' attack on the compatability of interests between representatives and absentees is directed at plaintiff Rockler only. It is defendants' position that Rockler is potentially liable at least to some of the class claimants and that this fact raises a conflict of interest sufficient to preclude Rockler's serving as a representative. The theory or theories of liability upon which defendants rely is not altogether clear. Though it is not suggested that registration was either attempted or required under the Securities Exchange Act of 1933, 15 U.S.C. § 77a et seq., it is nonetheless charged that Rockler will be liable as an "underwriter" at least as to the 2,000 Graphic shares it sold on June 30, 1969. It may be defendants' belief that Rockler's status as an underwriter would be dispositive of liability under Minnesota's Blue Sky Law, Minn.Stat. § 80.01 et seq. The court need not venture to rule on this issue. It is undisputed that after undertaking to make a market in Graphic stock, Rockler purchased 8,400 shares on its own account over a period of two weeks commencing some seven months after the shares were registered and two weeks subsequent to the secondary trading authorization. Defendants do not allege that any of the shares purchased by Rockler at that time were acquired from the issuer or from a person in a control position with respect to the issuer. Nor is there any assertion that Rockler "sponsored" Graphic stock or otherwise actively solicited its subsequent sales of 2,000 shares.[11] Thus, regardless of defendants' purpose in making the assertion, the court cannot make a finding on the present state of the record that Rockler participated directly or indirectly in any "underwriting" of Graphic stock. *See,* Lustgarten v. Albert Teller & Co., 304 F.Supp. 771 (E.D.Pa. 1969).

The court is cognizant of the fact that exemption from registration under the 1933 Securities Act does not preclude liability under the antifraud provisions of the securities laws. Moreover it is a settled principle that fraud in the context of the securities laws may be a broader concept than common-law fraud, and that the securities acts are to be construed flexibly to effectuate their remedial purpose. *See,* Securities & Exchange Commission v. Capital Gains Re-

10. Professor Moore apparently takes the view that 23(a) (4) requires a showing of both mutually coextensive, and nonantagonistic interests on the part of the representative. 3B Moore's Fed.Prac. ¶ 2306–2 (1969). Under this view 23(a) (3) is simply an alternate way of expressing the requirements of 23(a) (4), and as such might be argued to appear useless.

11. The customary practice of a market maker in a particular security apparently is to report for quotation "bid" and "asked" prices to indicate, respectively, amounts for which it proposes to buy or sell the stock. These figures along with those of other brokers and dealers making the market in over-the-counter securities are frequently published daily in a market sheet. The "market" made by broker-dealers such as Rockler is merely the range of "bid" and "asked" prices reported. A market maker may act as a broker or dealer, in either solicited or unsolicited transactions, or both. The reported figures are not offers, and are no certain indication of the prices at which trades have been, or will be made. In fact, due to daily fluctuations in sales, such figures frequently are inaccurate even by the time they are published. *See generally* 2 Loss, Securities Regulation, 1278–83 (2d ed. 1961).

search Bureau, Inc., 375 U.S. 180, 200–201, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963); Myzel v. Fields, 386 F.2d 718, 733 (8th Cir. 1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). However, this broadened concept of liability must be grounded in some special relationship between Rockler and Graphic on the one hand, or between Rockler and its purchasers on the other. *See, e. g.* Phillips v. Reynolds & Co., 294 F. Supp. 1249, 1255 (E.D.Pa.1969); Avern Trust v. Clarke, 415 F.2d 1238, 1240 (7th Cir. 1969). Defendants do not suggest that Rockler acted as an "insider", or that it was subject to the expanding duties of a broker in dealing with customer's accounts.[12] Rather it appears that Rockler, at all times relevant, acted as an ordinary dealer in the over-the-counter market, purchasing and selling Graphic shares for its own account, and sharing a status substantially identical to any other secondary trader. See *e. g., ·*Weiss v. Tenney Corp., *supra,* 47 F.R.D. at 293. Rosen v. Bergman, 40 F.R.D. 19, 22 (S.D. N.Y.1966).

■ Whether or not at this stage any basis for potential liability on the part of Rockler has been shown, the court's rejection of defendants' allegations of conflict does not rest upon ambiguities in the facts thus far developed.[13] The type of conflict proscribed by Rule 23(a) (3), "must be as to the subject matter of the suit." Redmond v. Commerce Trust Co., 144 F.2d 140, 151 (8th Cir., 1944); 3B Moore's *supra* ¶ 23.07(3) at 23–403 to 23–404. Presuming that a proper basis had been established, Rockler's potential liability still would

not raise a substantial conflict within the class over the precise issues in litigation. The interests which Rockler is asserting herein are those of a defrauded shareholder. Even if Rockler were treated as an underwriter, or otherwise held liable in fraud in connection with its re-sale of 2,000 Graphic shares, such would not preclude Rockler's recovery from defendants under the anti-fraud provisions of the securities laws for the 6,400 shares it still holds. Such recovery might be precluded only if it were determined that Rockler was an equal participant with defendants in the alleged fraud. *Compare,* Kuehnert v. Texstar Corp., 412 F.2d 700, 704–705 (5th Cir. 1969), with CAN–AM Petroleum Co. v. Beck, 331 F.2d 371, 373 (10th Cir. 1964). Its liability, if any, may or may not be sufficient to defeat its individual claim a greater or lesser extent, just as other claimants may be denied recovery by other defenses. This prospect, however, does not render its interests certainly as to the 6,400 shares in any way antagonistic to or in conflict with the interests of the class, nor does it effect the typical issues which are the subject of the law suit. *See* Mersay v. First Republic Corp. of Amer., *supra,* 43 F.R.D. at 468; Reichlin v. Wolfson, 47 F.R.D. 537, 539 (S.D. N.Y.1969); Siegel v. Chicken Delight, Inc., 271 F.Supp. 722, 728 (N.D.Cal. 1967).

■ Defendants argue in addition to the above that there has been no adequate showing of interest on the part of absentees to obtain rescission or other recovery of their losses. Plaintiffs in

---

12. A broker's obligation to his customers is usually expressed in terms of the "shingle" theory of liability under which a broker is said to imply, merely by "hanging out his shingle," that he will deal fairly with the public and in accordance with the standards of the profession. See *e. g.,* Charles P. Lawrence, S.E.C. Sec. Exch. Act release # 8213 (Dec. 19, 1967), *aff'd* 398 F.2d 276 (1st Cir. 1968). MacRobbins & Co., 41 S.E.C. 116 (1962), *aff'd sub nom.* Berko v. S.E.C., 316 F.2d 137 (2d Cir. 1963). See also 2 Loss, Securities Regulation, 1489–93 (2d Ed. 1961). This "implied warranty" appears to be more rigidly enforced in regulatory proceedings than in civil suits for damages. See Hanly v. S.E.C., 415 F.2d 589, 596–597 (2d Cir. 1969).

13. For this reason, the court deems it unnecessary to discuss the possibility of a hearing on the issue of Rockler's potential liability.

their brief contend that a number of absentees have registered an interest in the suit, but that intervention was not encouraged for practical as well as ethical reasons. In any case, as the court pointed out in Harris v. Palm Springs Alpine Estates, Inc., *supra*, 329 F.2d at 914, "[a]dequacy of representation is a question of fact, to be raised and resolved in the trial court in the usual manner * * and assertions in defendants' brief in this court are ineffectual to make a factual issue on plaintiffs' allegations of ability to protect the interests of the class, much less to disprove them."

■ Plaintiffs' allegations regarding the class disclose a prima facie mutuality of interests among all shareholders claimed to be defrauded in recovering their losses.[14] It is not suggested that the plaintiffs have failed to request relief common to the class.[15] Rather, defendants' contention rests upon the unsubstantiated allegation that the relief sought may not inure to the benefit of all or most of the absentees. No registered opposition to the suit has been proven. Nor is the mere absence of actual intervention probative on this issue. See Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968), *cert. denied* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Mersay v. First Republic Corp. of America, *supra*, 43 F.R.D. at 470–471; Dolgow v. Anderson, *supra*, 43 F.R.D. at 495–496. In short there is nothing from which the court can infer that recovery of any kind is peculiarly in the interests of these representatives, to the exclusion of the absentees.[16]

(a) (4) *Adequacy of Representation*

■ Defendants contend that if plaintiff Rockler is removed as a representative in the present litigation, the holdings of plaintiff Norburg would be insufficient to insure adequate representation of the class. In light of the court's determination to retain Rockler as a representative, the issue thus raised has become moot. In any case, courts generally disfavor reliance on quantitative elements as a factor in determining the adequacy of representation under Rule 23(a) (4). *See* Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968); Hohmann v. Packard Instrument Co., 399 F.2d 711, 714 (7th Cir. 1968);

14. Defendants contend, in effect, that if plaintiffs' claims raise issues of misrepresentation and reliance which are not common to the class, their claims are not typical of the class. While some courts appear to equate the requirements of 23 (a) (3) with those of 23(a) (2), *e. g.*, Swanson v. American Consumer Industries, Inc., 415 F.2d 1326, 1332–1333 (7 Cir. 1969); Green v. Wolf Corp., 406 F.2d 291, 299 (2d Cir. 1968), *cert. denied* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Iowa v. Union Asphalt & Roadoils, Inc., 281 F.Supp. 391, 401 (S.D.Iowa 1968) (antitrust); American Airlines v. Transpor. Workers Union, 44 F.R.D. 47, 48 (N.D.Okl.1968); Philadelphia Elec. Co. v. Anaconda Amer. Brass Co., 43 F.R.D. 452, 457 (E.D.Pa. 1968) (antitrust), or with those of 23(b) (3), *e. g.* Green v. Wolf Corp., *supra*; Weiss v. Tenney Corp., 47 F.R.D. 283 (S.D.N.Y.1968); Fogel v. Wolfgang, 47 F.R.D. 213 (S.D.N.Y.1969); See also 3B Moore's Fed. Prac. ¶ 23.45(2) at 23–756 (2d Ed. 1969), the court would reject such formulations on the grounds that they attribute a needless duplicity to the rule.

15. Plaintiffs' complaint requests rescission and return of consideration as to those investors who still own the securities, and damages as to those who do not, together with punitive damages. Common relief is nevertheless requested since "in the last analysis, each member of the class seeks a money judgment in the amount required to make him whole." Harris v. Palm Springs Alpine Estates, Inc., *supra*, 329 F.2d at 915.

16. Defendants place particular reliance on Maynard, Merel & Co., Inc. v. Carcioppolo, 51 F.R.D. 273 (S.D.N.Y.1970). In that case the court found conflict between the proposed representative and the class, because the former was interested in rescinding defendant's concealed merger, to the exclusion of monetary compensation for its losses. The finding was the product of a number of peculiar circumstances none of which appear in the present case.

Green v. Wolf Corp., *supra*, 406 F.2d at 298. "[e]ven one member of a large class of claimants can provide the kind of representation for all which might otherwise be unattainable if each claimant had to act individually." Hohmann v. Packard Instrument Co., *supra*. Aside from the supposed limits as to financial incentive, defendants in no way impune the capabilities of the representatives' counsel. The court is persuaded that, from the point of view of counsel, the motive vigorously to prosecute class claims is a product of the total possible recovery as well as the individual interest of the representatives.

### 23(b) (3) *Predominance Requirement*

[14] The court is of the opinion from what is herein set forth that the action may be maintained as a class action and that the risks mentioned in Rule 23(b) (1) (A) and (B) can thereby be avoided and that under (b) (2) relief can be granted to the class as a whole. Substantial argument has been directed to (b) (3), as to whether common questions will predominate.

The purpose of this predominance requirement is to achieve economy and efficiency in the settlement of disputes. 3B Moore's *supra* ¶ 23.45(2) at 23–751; Advisory Committee Note, 39 F.R.D. 69, 102–103 (1966). The notes of the Advisory Committee on the amended rule indicate that the 23(b) (3) concept is peculiarly suited to cases involving "a fraud perpetrated on numerous persons by the use of similar misrepresentations." Advisory Committee's Note at 103. The Committee however also suggests that the concept will be inappropriate where material variations occur in the representations made by defendants, and the degrees of reliance differ among class members. Advisory Committee's Note at 103.

Defendants first contend that the common questions referred to by the court in connection with its discussion of 23(a) (2) do not predominate because plaintiff Rockler alleges to have relied on oral as well as written representations by defendants.[17] However, "material variation is likely to occur only in oral representations, not in written or published items * * *" A. Bromberg, Securities Laws; Fraud-SEC Rule 10(b)–5, ¶ 11.6 at 258 n. 33.1 (1969). This is not a case where the allegations of fraud encompass oral statements only. *See e. g.*, Moscarelli v. Stamm, 288 F.Supp. 453, 462–463 (E.D.N.Y.1968); Hirschi v. B. & E. Securities, Inc., 41 F.R.D. 64 (D. Utah 1966). Rather, Rockler's allegations concerning defendants' oral representations indicate that they consisted of confirmations and assurances concerning misstatements and omissions already contained in the registration materials. Moreover, a significant portion of plaintiffs' claims rest upon defendants' alleged failure to disclose material facts, a sin of omission "necessarily common to all shareholders." Esplin v. Hirschi, 402 F.2d 94, 100 (10th Cir. 1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L. Ed.2d 459 (1969). All of the alleged misrepresentations appear to be "interrelated", Fischer v. Kletz, 41 F.R.D. 377, 381 (S.D.N.Y.1966), in a "common course of conduct" as to the class. Green v. Wolf Corp., *supra*, 406 F.2d at 300; Dolgow v. Anderson, *supra*, 43 F.R.D. at 489. Thus, the court is not persuaded that material variation on the issue of misrepresentation is likely to occur. In any case to balk at complex factual issues at this stage in the proceedings would be to emasculate the rule in ignorance of its pliability. Instead, the court adopts the following view expressed by the court in Kronenberg v. Hotel Gov-

---

17. While the specific allegations of oral fraud appearing in plaintiffs' complaint are limited to certain representations said to have been made to Rockler, this does not preclude the possibility that other class members, particularly the other broker-dealers, received and relied upon oral representations.

ernor Clinton, Inc., 41 F.R.D. 42, 45 (S.D.N.Y.1966):

"While there may be different kinds of misrepresentations alleged with respect to different plaintiffs, including some oral misrepresentations, and while such factors might have led to a dismissal of a class action under the old rule, e. g., Speed v. Transamerica Corp., 5 F.R.D. 56 (D.Del.1945); Gilbert v. Clark, 13 F.R.D. 498 (D.Mass. 1952), the new Rule 23 provides the flexibility to permit this action to proceed. It may very well develop that the misrepresentations made to the purchasers were in fact very similar, if not identical. If, on the other hand, the facts should reveal in the course of the pre-trial development of the case that the alleged misrepresentations were so varied as to render the action unmanageable (Fed.R.Civ.P. 23(c) (1)), the Court can order that the class allegations be stricken and that the action proceed on behalf of the named plaintiffs alone. Fed.R.Civ.P. 23(c) (1) and 23(d) (4)."

In addition, defendants contend that substantially different factual issues will be raised when the various types of purchasers encompassed in the class, attempt to establish the reliance element necessary to their 10(b)–5 claims. More specifically, defendants contend that since the alleged false registration materials are required by law to be delivered only to the original distributees there will be a material variation in the proof of reliance between such recipients and those secondary purchasers who received the materials indirectly or not at all. It is further contended that secondary purchasers are more likely to have received and relied on information, false or otherwise, from sources other than the defendants. Finally defendants contend that in determining the reasonableness of any alleged reliance, the court must contrast the contacts, financial expertise, and investment interests of the broker dealers, with that of the non-broker purchasers.[18]

It is perhaps unlikely that the issue of reliance will in all instances present questions entirely common to the class. However, "[s]ince the complaint alleges a common course of conduct over the entire period, directed against all investors, generally relied upon, and violating common statutory provisions, it sufficiently appears that the questions common to all investors will be relatively substantial." Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964). The interests of efficiency and economy would not be served by requiring each absentee to relitigate those issues which the court has found common to the class, "simply because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle." Green v. Wolf Corp., supra, 406 F.2d at 300. See also, Swanson v. American Consumer Indus., Inc., 415 F.2d 1326, 1333 (7th Cir. 1969). Moreover, the court entertains serious doubt that what may be potentially meritorious claims of many members of the alleged class will ever be adjudicated if the class action is dismissed. Reliance is an issue lurking behind every securities fraud claim, and to require that it first be proven, would effectively negate the concept of a 10b–5 class action. Green v. Wolf Corp., supra, 406 F.2d at 300–301; Herbst v. Able, 47 F.R.D. 11, 16 (S.D. N.Y.1969). Thus a rigid application of the requirements of Rule 23(a) (2) and (b) (3), see Berger v. Purolator Products, Inc., 41 F.R.D. 542, 545 (S.D.N.Y. 1966), has largely been rejected in favor of a policy which permits securities fraud claimants to proceed as a class in spite of foreseeable variation on the issue of reliance. Green v. Wolf Corp., supra; Eisen v. Carlisle & Jacquelin, supra, 391 F.2d at 565; Harris v. Palm Springs

---

18. In particular, defendants contend that it would be difficult for Rockler, as an experienced broker-dealer, to justify reliance on 13 month old financial data, especially when it was undertaking to make a market in Graphic stock.

Alpine Estates, Inc., 329 F.2d 909, 914–915 (1964); Mersay v. First Republic Corp. of America, *supra;* 43 F.R.D. at 471; Brennan v. Midwestern United Life Ins. Co., 259 F.Supp. 673, 683–684 (N.D. Ind., 1966); Dolgow v. Anderson, 43 F.R.D. 472, 490 (S.D.N.Y.1966); Kronenberg v. Hotel Governor Clinton, Inc., *supra;* see also A. Bromberg, *supra,* at 257; Cf. Richland v. Cheatham, 272 F. Supp. 148, 153 (S.D.N.Y.1967). Under such circumstances, the purpose of the Rule dictates that the court take advantage of its flexible provisions. Once the common elements have been adjudicated, the court may or at least could order separate trials on the issue of reliance. Fed.R.Civ.P. 23(c) (4); *see* Green v. Wolf Corp., *supra,* 406 F.2d at 301; Cannon v. Texas Gulf Sulphur Co., 47 F.R.D. 60, 64 (S.D.N.Y.1969); Minnesota v. United States Steel Corp., *supra,* 44 F.R.D. at 569–70; Advisory Committee's Note at 106. "Even if individual questions arise during the course of litigation, which render the action 'unmanageable,' the court still has the power at that time to dismiss the class action and permit the plaintiff to proceed only on behalf of himself. Fed.R.Civ.P. 23(c) (1)." Eisen v. Carlisle & Jacquelin, *supra,* 391 F.2d at 566. The court does not envision such in this case, but this possibility always exists as a "safety valve" to be employed if necessary.

Plaintiffs have suggested on authority of Rule 23(c) (4), that the proposed class be subdivided into three groups to reflect the major alleged variations on the reliance issue—i. e., original distributers, nonbroker secondary purchasers, and broker-dealers. However the alleged class does not include purchasers of different types of securities, *compare,* Dolgow v. Anderson, *supra,* 43 F.R.D. at 492; Herbst v. Able, 278 F.Supp. 664, 667–668 (S.D.N.Y.1967); Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42, 46 (S.D.N.Y.1966); with Fischer v. Kletz, 41 F.R.D. 377, 384 (S.D.N.Y.

1966); and as indicated above, plaintiffs clearly have alleged a common course of misconduct affecting purchasers during the entire period of the alleged misrepresentations. *Compare,* Fischer v. Kletz, *supra* with Dolgow v. Anderson, *supra,* 43 F.R.D. at 491–492; Richland v. Cheatham, 272 F.Supp. 148, 153 (S.D. N.Y.1967). In the absence of a successful attack on the standing of these representatives, it must be presumed that defendants would justify subdivision of the class at this time solely on the grounds that such action would increase efficiency and manageability. The court is of the view that efficiency will be best served by delaying such action if it becomes necessary or is to be taken at all until after the issues clearly common to the class have been disposed of. The class is sufficiently identifiable for the purposes of notice and any additional pretrial procedures that may ensue. No substantial prejudice will result to defendants by delaying this determination. See Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 568 (2d Cir. 1968); Weiss v. Tenney Corp., 47 F.R.D. 283, 294 (S.D. N.Y.1969); see Green v. Wolf Corp., *supra,* 406 F.2d at 301–302 n. 15.

23(b) (3) *Superiority of Class Action*

██ Defendants' attack upon the superiority of a class action would appear to rest upon the truism that the interests of individual plaintiffs are best protected through vigorous and capable prosecution of separate trials. If such were a proper basis for the determination of superiority, there would never be a class action. Separate trials, as well as the alternatives suggested by the advisory committee,[19] presuppose plaintiffs who know they have been harmed and who are willing and able to take care of their own interests. Dolgow v. Anderson, 43 F.R.D. 472, 484 (E.D.N.Y.1968); *quoting,* Frankel, Amended Rule 23 From a Judges Point of View, 32 Antitrust, L.J. 295, 298 (1966). Such a presumption is

---

19. The alternatives suggested in the Advisory Committee's Notes include Consolidation under Rule 42(a), intervention under Rule 24 and test cases.

unwarranted where, as here, there is no reason to believe that the publicity attending the litigation has been sufficient generally to alert the class members as to the existence of the law suit. In any case, many of the claims of individual class members may be too small to justify on an individual basis, the investigative and litigation expense involved in prosecuting the suit. *See* Eisen v. Carlisle & Jacquelin, *supra*, 391 F.2d at 566 n. 16. Escott v. Barchris Construction Corp., 340 F.2d 731, 733 (2d Cir. 1965), *cert. denied sub nom.* Drexel & Co. v. Hall, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965); Advisory Committee's Note at 104. Thus, absent active solicitation of claimants, with, perhaps, a promise to bear the costs of litigation,[20] it is unlikely that all or most of those class members having small claims will ever come into court, regardless of the merits of their claims.

The general view of courts and commentators is that the class action device is a necessary vehicle for the vindication of small claims. *See* Esplin v. Hirschi, *supra*, 402 F.2d at 101; Eisen v. Carlisle & Jacquelin, *supra*, 391 F.2d at 567; Dolgow v. Anderson, *supra*, 43 F.R.D. at 484–485; Note, Class Action Treatment of Securities Fraud Suits Under the Revised Rule 23, 36 Geo.Wash.L.Rev., 1150, 1151–1152 (1968); 3 Loss, Securities Regulation, 1819 (2d Ed. 1961).[21]

"(A) class action must be deemed the only practical method of litigating these issues when the complex nature of the litigation and the comparatively small individual financial interests are considered. The alternative to the class action, in cases such as these, undoubtably is compromise, settlement and voluntary discontinuance of an action that may be just and proper." Weiss v. Tenney Corp., 47 F.R.D. 283, 291 (S.D. N.Y.1969). See also, J. I. Case v. Borak, 377 U.S. 426, 432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Whatever the interest of individual claimants in retaining control over the litigation of their claims, and they may of course opt out of the class if they wish, the court is persuaded that in the present case a class action is superior to the alternative procedures available.

Defendants Marvin and Post, who were directors and shareholders of defendant corporation at the time the registration materials were filed, both contend that their connection with the alleged misrepresentations was not such as to give rise to liability even if plaintiff's prevail against the remaining defendants. Accordingly, they have requested the court to order a preliminary evidentiary hearing at which plaintiffs would be required to make a prima facie showing of liability as to them.

It is clear that the complaint herein states a claim as to all the defendants upon which relief could be granted. While the proposed hearing might elicit further details regarding the participation of any and all of the named defendants in the alleged fraud, the court is not convinced of the utility or fairness of such a procedure. It could not reduce defendant's discovery burden without in some way limiting plaintiffs' pretrial procedural

---

**20.** The possibility of a court authored notice to small claimants designed to alert them to the existence of the law suit, permitting intervention without class action, has been raised only to be dismissed. *See*, Note, 48 Texas L.Rev. 417, 438–439 (1969). Even with such notice, "[t]o permit the defendants to contest liability with each claimant in a single, separate suit, would in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was [designed] to prevent." Dolgow v. Anderson, *supra*, 43 F.R.D. at 485, quoting 3 Loss, Securities Regulation, 1819 (2d ed. 1961). See also Hohmann v. Packard Instrument Co., 399 F.2d 711, 715 (7th Cir. 1968).

**21.** The therapeutic value of the class action device in the securities fraud context has also been stressed. Dolgow v. Anderson, *supra*, 43 F.R.D. at 485–487; Note, The Cost-Internalization Case for Class Actions, 21 Stan.L.Rev. 383, 415 (1969).

**348**

rights. The only alternative would be to embroil the court in a cumbersome fact finding procedure leading to a resolution of ultimate issues without affording plaintiffs their right to a jury trial. Mersay v. First Republic Corp. of Amer., *supra,* 43 F.R.D. at 469.

Defendants place particular reliance on Dolgow v. Anderson, *supra* where the court found that fairness to defendants required an evidentiary hearing on the issue of liability prior to issuing notice of the action to the members of the alleged class. Whatever the merits of that determination it is clear that the rationale of the *Dolgow* court is not persuasive with respect to the present facts. In *Dolgow*, the court likened class action orders to preliminary injunctions on the theory that the notice to class members might lend judicial support to plaintiffs' claims, or adversely affect market confidence in defendants' securities. In the present case, trading in defendant's securities has already been suspended by order of the State Securities Division, and notice of the suit would issue in any case in connection with plaintiffs' action against the remaining defendants.

A separate order has been entered.