## CL–ALEXANDERS LAING & CRUICKSHANK, Plaintiff,

v.

**Bertha GOLDFELD, in her Capacity as Preliminary Executrix of the Estate of Seymour B. Goldfeld, Goldfeld and Charak, Laura Katz, in her Capacity as Preliminary Executrix of the Estate of Hyman Katz, Arthur Andersen & Co., a Partnership Organized Under the Laws of Illinois, and Arthur Andersen & Co., a Partnership Organized Under the Laws of the United Kingdom, Defendants.**

### No. 87 Civ. 6113 (MBM).

United States District Court,
S.D. New York.

Sept. 5, 1989.

Jerome M. Congress, Krishnan S. Chittur, Milberg Weiss Bershad Specthrie & Lerach, New York City, for plaintiff.

James D. Zirin, James J. Sabella, Jill I. Braverman, Breed, Abbott & Morgan, New York City, for defendants Arthur Andersen (U.S.) and Arthur Andersen (U.K.).

Thomas F. Breen, D'Amato & Lynch, New York City, for defendants Seymour B. Goldfeld and Goldfeld and Charak.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff CL–Alexanders Laing & Cruickshank ("Alexanders"), a London investment banking firm, sues on behalf of a class of British citizens and institutions who bought two million shares in Container Industries, Inc. ("Container"), a Delaware corporation with its principal place of business in New Jersey. The purchase, part of a private placement, was made in Great Britain in June 1986. Plaintiff acted as underwriter for the offering. Plaintiff hired defendant Arthur Andersen & Co. of England ("Andersen–U.K.") to provide a "comfort letter" for inclusion in the prospectus. Defendants Seymour B. Goldfeld and Hyman Katz, now both deceased, served as Container corporate officers. Defendant Goldfeld and Charak, a New York law firm and Container's legal counsel, provided an opin-

ion letter warranting that there were no material misstatements or omissions in the prospectus. Now before the court is plaintiff's motion to certify a class of 25 British investors, pursuant to Fed.R.Civ.P. 23(a) and (b)(3). For the reasons set forth below, the motion is denied.

Plaintiff charges that defendants conspired to issue misleading and false statements about Container's sales projections for its Exxel non-aerosol self-pressurized spray containers. Plaintiff's primary claim arises under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982) and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1989); there are attendant claims for breach of contract and fraud. Additionally, plaintiff claims that Katz violated § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2) (1982) and that Andersen breached its fiduciary duty to plaintiff.

In an earlier opinion, *CL–Alexanders Laing & Cruickshank v. Goldfeld*, 709 F.Supp. 472 (S.D.N.Y.1989), this court denied defendants' motion to dismiss for lack of subject matter jurisdiction. That opinion contains a full explication of the factual background to plaintiff's claim. Briefly, plaintiff contends that Container's 1986 sales projections in the prospectus were too high, and that Container knew before the placement closed in June 1986 that actual sales in the second quarter of 1986 were far below these projections.

Before plaintiff may prosecute a class action, it must prove that each of the prerequisites of Fed.R.Civ.P. Rule 23 is met. *Greenspan v. Brassler*, 78 F.R.D. 130, 131 (S.D.N.Y.1978); *Lloyd v. Industrial Bio–Test Laboratories, Inc.*, 454 F.Supp. 807, 811–12 (S.D.N.Y.1978). Plaintiff's "[f]ailure to meet any one of the requirements of Rule 23 precludes certification of a class." *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir.1976). Under Rule 23(a), a plaintiff must prove: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). A plaintiff relying on Rule 23(b)(3) must meet two additional criteria: (1) questions of law or fact common to class members must predominate over any questions affecting individual members; and (2) the class action device must be superior to any other method of adjudication. Fed.R.Civ.P. 23(b)(3).

Although class action treatment is usually favored in securities fraud cases, *Berland v. Mack*, 48 F.R.D. 121, 125 (S.D.N.Y. 1969), a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

Plaintiff's class certification petition suffers from three defects. First, plaintiff seeks a class of at most 25, a low number. Second, plaintiff's position as the underwriter of the securities—with both access to information not relayed to other class members and obligations to those class members—makes its claim atypical. Third, as all the class members are British, and British law does not afford defendants *res judicata* protection against class members in an "opt-out" kind of class, the class action form is not superior to joinder. Indeed, plaintiff's request that this court use its equitable powers to certify the class under an "opt-in" arrangement in order to solve the *res judicata* problem suggests that joinder is far more appropriate. Although no one of these factors taken alone warrants denial of certification, together they compel the conclusion that this is not a proper class action.

Rule 23(a)(1) permits class action treatment only when "the class is so numerous that joinder of all class members is impracticable." Fed.R.Civ.P. 23(a)(1). Although no particular number define the point at which a class action is deemed conclusively inappropriate, *see Dirks v. Clayton Brokerage Co. of St. Louis Inc.*, 105 F.R.D. 125, 131 (D.Minn.1985), a small class militates against certification. *Ewh v. Mon-*

*arch Wine Co.,* 73 F.R.D. 131, 132 (E.D.N. Y.1977) (proposed class of 34 insufficient to satisfy numerosity requirement); *see also In re W.T. Grant Co.,* 24 B.R. 421 (Bankr. S.D.N.Y.1982) (certification of 33 potential members denied).

Plaintiff cites cases which have certified classes of 25 or fewer. *Cypress v. Newport News Gen. & Nonsectarian Hospital Ass'n,* 375 F.2d 648, 653 (4th Cir.1967) (18); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986) (29); *Slanina v. William Penn Parking Corp.,* 106 F.R.D. 419, 423 (W.D.Pa.1984) (25); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 105 F.R.D. 506 (S.D.Ohio 1985) (23); *Rosario v. Cook County,* 101 F.R.D. 659 (N.D.Ill.1983) (20); *Allen v. Isaac,* 99 F.R.D. 45 (N.D.Ill. 1983) (17); *Kilgo v. Bowman Transp., Inc.,* 87 F.R.D. 26, 29–30 (N.D.Ga.1980) (23), *aff'd,* 789 F.2d 859 (11th Cir.1986); *Meyer v. Stevenson, Bishop, McCredie, Inc.,* [1975–76 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,548 at 99,745 (S.D.N.Y. May 11, 1976) (30); *Sabala v. Western Gillette, Inc.,* 362 F.Supp. 1142, 1147 (S.D.Tex.1973) (26), *aff'd in part, rev'd on other grounds,* 516 F.2d 1251 (5th Cir.1975), *vacated on other grounds,* 431 U.S. 951, 97 S.Ct. 2670, 53 L.Ed.2d 268 (1977); *Davy v. Sullivan,* 354 F.Supp. 1320 (M.D.Ala.1973) (10); *Dale Elec., Inc. v. R.C.L. Elec., Inc.,* 53 F.R.D. 531, 534–35 (D.N.H.1971) (13); *Philadelphia Elec. Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452, 463 (E.D.Pa.1968) (25).

But in almost all those cases, the courts cited special circumstances warranting certification despite the small class size. *Cypress,* 375 F.2d at 653 (employment discrimination claim; court noted that number of applicants to positions was small because of the hospital's "notorious discriminatory policy" and that individuals feared "possible reprisals should they seek to attain their rights"); *Riordan,* 113 F.R.D. at 62 (securities fraud claim; court emphasized geographical dispersion of plaintiffs who resided in nine different states); *Slanina,* 106 F.R.D. at 423–24 (employment discrimination case where plaintiffs sought equitable relief which would help others and class members had fears of reprisal if they were forced to act individually; court warned, however, that 25 members, "in and of itself, would probably not render joinder impracticable"); *Basile,* 105 F.R.D. at 508 (securities fraud case where court certified subclass of 23 where general class numbered 275 investors); *Rosario,* 101 F.R.D. at 661–62 (employment discrimination claim; court emphasized that plaintiffs were seeking injunctive relief and thus that future class members would be afforded relief, that plaintiffs in discrimination cases are often reluctant to sue employers and fearful of the consequences, and that joinder would be hampered by the need to exhaust EEOC procedures); *Allen,* 99 F.R.D. at 49, 53 (employment discrimination claim; court noted that class members were "scattered throughout the United States" and that they feared retaliation from employer if they sued individually); *Kilgo,* 87 F.R.D. at 29 (although plaintiffs had only identified 23 class members in this employment discrimination case, plaintiffs alleged that "there is an unknown number of deterred potential applicants and future applicants eligible for the relief sought;" indeed, the court would later significantly expand the class, 789 F.2d at 864, 877–78); *Sabala,* 362 F.Supp. at 1146–47 (employment discrimination claim); *Davy,* 354 F.Supp. at 1325 (prisoner civil rights case; court notes that class action seeks injunctive relief and thus will benefit individuals other than the plaintiff class); *Dale Elec., Inc.,* 53 F.R.D. at 534–35 (patent infringement action; class action appropriate because class members were dispersed over a large geographic area "from California to New York, and from North Carolina to Nebraska"); *Philadelphia Elec. Co.,* 43 F.R.D. at 463 (antitrust action; although only 25 individuals made "substantial purchases," there were 43 possible members of the class).

Courts in this circuit have repeatedly refused to certify classes as large as or larger than this one. *See, e.g., Haggerty v. Comstock Gold Co., L.P.,* [1986–87 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,813 at 93,980, 1986 WL 7797 (S.D.N.Y. July 3, 1986) and cases cited therein; *Dannenberg*

*v. Dorison,* 603 F.Supp. 1238, 1243 (S.D.N.Y.1985) (denying certification to class with maximum size of 33); *Maiden v. Biehl,* 582 F.Supp. 1209 (S.D.N.Y.1984) (denying certification to proposed 28–member class of investors in private placement); *Moscarelli v. Stamm,* 288 F.Supp. 453, 463 (E.D.N.Y. 1968) (denying certification to proposed class of approximately 25 members; court noted that "[j]oinder has been held preferable [to class certification] where the number of prospective members lies between 30 and 40").

*Meyer,* the one securities fraud case in this district where the court certified a small class of investors even though no showing of special circumstances was made, does not aid plaintiff. Judge Cannella tellingly noted that, if the class were "made up of 15–20 members," *supra* at 99,746, the absence of special circumstances would tip the balance against certification. Moreover, even with 30, more than the class here, the judge warned that he would "reconsider the question [of certification] if a significant number of class members choose to opt out." *Id.* at 99,746. Plaintiff, however, relies on *Meyer's* quotation from *Philadelphia Elec. Co.,* 43 F.R.D. at 463, to the effect that,

> While 25 is a small number compared to the size of the other classes being considered, it is a large number when compared to a single unit. I see no necessity for encumbering the judicial process with 25 lawsuits, if one will do.

But as Judge Walker has noted, "[such] logic is in direct opposition to the weight of authority. The Federal Rules of Civil Procedure do not permit a disregard of the requirements of 23(a) simply for the purposes of convenience." *Haggerty, supra,* at 93,980 (rejecting certification of class of 15).

Accordingly, although the numerosity requirement does not mean that "joinder must be impossible, but rather ... that the Court must find that the difficulty or inconvenience of joining all members ... makes class litigation desirable," *Northwestern Nat'l Bank v. Fox & Co.,* 102 F.R.D. 507, 510 (S.D.N.Y.1984) (quoting *In re Itel Sec.*

*Litig.,* 89 F.R.D. 104, 112 (N.D.Cal.1981)), where the number of class members is so low, plaintiff must show special circumstances warranting class certification. *Emanuel v. Marsh,* 828 F.2d 438, 444 (8th Cir.1987), *vacated on other grounds,* —— U.S. ——, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988). I find no special circumstances here.

Plaintiff claims that 13 members' claims are for $10,000 or less, that three of those are for $1000 or less, and that such individuals would have no interest in pursuing this action if class certification were denied. However, defendants counter that nine of the class members' claims are for $50,000 or more, including five in excess of $250,000. (Anthony Pullinger Aff., Exh. A) This is thus not a situation where an overwhelming majority of class members would be deterred from pursuing this action. Indeed, in support of its petition for class certification, plaintiff points out that all class members have signed forms consenting to plaintiff's bringing this class action. But this expression of interest operates just as strongly against class certification because it shows that the class members are already interested enough that they might be willing to join as plaintiffs. Only one class member has indicated any hesitation so far about greater involvement in this lawsuit.

Plaintiff asserts also that joinder is impractical because all the class members are British, which imposes extra intervention costs upon them. However, cases in which geography has been found a special circumstance have emphasized the geographical *dispersion* of the class. *Riordan,* 113 F.R.D. at 62. The obvious rationale is that dispersion makes it difficult for joined plaintiffs to coordinate their legal strategy. There has been no showing here that the class members are so dispersed in England that coordination among them is impossible. To the contrary, six members are presently employed by Alexanders, two are former employees, and three are related by blood or marriage to Adrian Kyriazi, a former Alexanders employee. (Anthony Pullinger Aff., Exh. A) Also, an investment manager for one of the placees, Midland

Bank Trust Company Ltd., is related by blood to two other class members. Finally, one placee, A. Sarasin & Cie, is owned by another class member, Sarasin Investment Management Ltd. *Id.* Far from being dispersed, these potential plaintiffs are close geographically and otherwise. Moreover, plaintiff has not cited any case where a court found special circumstances merely because all the class members were from one distant place.

Plaintiff was the underwriter for this private placement, and therefore cannot argue persuasively that its claim is "typical" [1] of claims by class members. It is true that the

> plaintiff and the class need only have an interest in prevailing on similar legal claims. Assuming such an interest, particular factual differences, differences in the amount of damages claimed, or even availability of certain defenses against a class representative may not render his or her claims atypical.

*Zeffiro v. First Pa. Banking & Trust Co.*, 96 F.R.D. 567, 569–70 (E.D.Pa.1983). However, "Rule 23(a)(3) may be used to screen out class actions when the legal or factual position of the representatives is markedly different from that of other members, even though common issues of law or fact are raised." *Kas v. Financial Gen'l Bankshares, Inc.*, 105 F.R.D. 453, 461 (D.D.C. 1985), *aff'd*, 796 F.2d 508, 519–20 (D.C.Cir. 1986). Although this court must refrain from considering the merits of the substantive claims, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732 (1974), it is obvious that plaintiff's special status as underwriter of this private placement gave it access to information and imposed duties that make its claims atypical. Alexanders' representatives participated in and relied on numerous calls and meetings with representatives of Andersen. (Zirin Aff., Exh. 4 (Julian Benson Dep. at 25–26, 88–89, 100–01, 179–81, 203)) Other class members had no contact with Andersen. *Id.* at 335. Alexan-

ders' representatives relied also on numerous telephone calls and meetings with Goldfeld. *Id.* at 238–41, 244, 250) Alexanders received an opinion letter about the placement from the law firm of Goldfeld and Charak. Apparently, none of the other class members knew about this opinion letter. (Zirin Aff., Exh. 4 (Benson Dep. at 283)) Moreover, as detailed in this court's earlier opinion, 709 F.Supp. at 474, Alexanders' representatives visited Container's headquarters in New Jersey to examine the company's plant and equipment and to discuss the private placement. During those visits, Alexanders had access to documents concerning Container's sales and customers. (Zirin Aff., Exh. 4 (Benson Dep. at 112–114)) The parties dispute whether Alexanders in fact received a worksheet, which Container's marketing director Sharon Bregman avers she delivered to Alexanders in June 1986, showing that actual sales in the second quarter of 1986 were well short of the projections. (Zirin Aff., Exh. 9 (Sharon Bregman Dep. at 37–39, 53)) A copy of this document, bearing the date June 17, 1986 (Zirin Aff., Exh. 10), was produced from plaintiff's files, although Alexanders' Benson avers that he did not receive the document until October 1986. (Zirin Aff., Exh. 4 (Benson Dep. at 135)) As a result, defendant Andersen has counterclaimed against Alexanders for contribution. Whether or not plaintiff received this information and whether or not this defense has any merit is immaterial to this motion.[2] What it shows is that Alexanders, because of its role as underwriter, was privy to information the other class members never saw and never knew about. Accordingly, I find that Alexanders' unique status as underwriter to this placement makes its claims atypical and its petition to be class representative inadequate. In *Seiler v. E.F. Hutton & Co., Inc.*, 102 F.R.D. 880, 890 (D.N.J.1984), the court found plaintiff's claims atypical because of his "close and trusting relationship" with an employee of the defendant. Similarly,

---

**1.** This discussion also applies to the requirement that the class representative be "adequate."

**2.** Consequently, I decline also plaintiff's invitation to decide the merits of Andersen's counterclaim at this time. *Eisen*, 417 U.S. at 163, 94 S.Ct. at 2145.

here, plaintiff's special position gave it both access to information not available to other class members and special obligations to those class members which may have been breached.

Plaintiff cites two cases it claims demonstrate that a plaintiff's status as an underwriter is not a bar to class certification. However, neither of those cases involved an actual underwriter of the securities at issue, which Alexanders admits it is here. In *In re U.S. Financial Securities Litigation*, 69 F.R.D. 24, 37–38 (S.D.Cal.1975), the representative plaintiff had an affiliate which acted as sub-underwriter for the debentures. In *Vernon J. Rockler & Co. v. Graphic Enter., Inc.*, 52 F.R.D. 335, 341, 342 (D.Minn.1971), defendant alleged that plaintiff acted as an underwriter, but the court found that "it appears that [plaintiff], at all times relevant, acted as an ordinary dealer in the over-the-counter market, purchasing and selling Graphic shares for its own account, and sharing a status substantially identical to any other secondary trader." The court then went on in dictum to express its view that, even if plaintiff was an underwriter, no typicality problem would be present. 52 F.R.D. at 342. Although in another case plaintiff's status as underwriter might not be sufficient to warrant denial of class certification, here the circumstances of the offering—plaintiff's status as the major underwriter for this private placement, its extensive communications with defendants, its receipt of substantial information which the other class members never received, and its reliance on Goldfeld and Charak's opinion letter—disqualify plaintiff from serving as class representative.

Moreover, Rule 23(b)(3) requires plaintiff to demonstrate that a class action would be "superior to other available methods for the fair and efficient adjudication of the controversy." Because all the class members are British subjects and British law does not bar relitigation if defendants prevail in a class action lawsuit, defendants argue that the class action method is in fact inferior to joinder. In *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996–97 (2d Cir.), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975), the Second Circuit held that a class of foreign investors, including British citizens, could not be certified because, *inter alia*, a judgment in favor of defendants would not bar future actions by the absent class members against the same defendants in the United Kingdom and other countries. The court cited

> uncontradicted affidavits that England [among other nations] would not recognize à United States judgment in favor of the defendant as a bar to an action by [its] own citizens....

*Smith v. Pinell*, 597 F.2d 994 at 996–97 (5th Cir.1979). Defendants here have filed an affidavit by a British barrister, Sir John Godfray Le Quesne, Q.C., which states that a British court will not recognize a foreign judgment in a United States "opt-out" class action because the British subject has "done nothing to invoke the assistance of the foreign court." (Le Quesne Aff. at ¶ 8) Le Quesne filed an affidavit to the same effect in the *Bersch* case.

Recognizing this dilemma, plaintiff proposes an extraordinary form of class action: an "opt-in" class. Plaintiff describes it this way:

> This would involve a notice of pendency of class action stating that the class members will not be included within the class unless they transmit to the Court a specific request for inclusion. The language in the notice of pendency characterizing the action and the effect of membership in the class would be approved by the Court. Consequently, class members who opted in would do so in full knowledge of the consequences if defendants should prove successful in the action. Since the class members would be affirmatively agreeing to be bound and voluntarily subjecting themselves to the jurisdiction of the Court for such purposes, the ultimate outcome in this action could not be relitigated by the class members in England.

(Pltf.'s Reply Memorandum at 41) This procedure apparently would satisfy the requirements for *res judicata* in Britain as set forth in Le Quesne's affidavit, and

would protect defendants from a second litigation by anyone who opted into the class. *See* Le Quesne Aff. at ¶ 24. However, there is a substantial question whether Rule 23 allows for certification of an opt-in class. In *In re U.S. Financial Securities Litigation,* 69 F.R.D. at 53–54, the court first warned that "the majority of the judiciary and the legal commentators believe that Rule 23 only provides for an 'opt-out' procedure." However, the court cited cases where "opt-in" procedures had been used, especially when the class was composed of governmental entities, such as municipalities and school districts. *Id.* at 53–54 and cases cited therein. Quoting Rule 23(d)'s general language granting courts discretion to fashion notices, the court concluded that an "opt-in" class was a possibility. Plaintiff admits, however, that "most securities class actions have involved opt-out rather than opt-in classes" (Pltf.'s Reply Memorandum at 42) and thus that an opt-in procedure is a rare device for special situations. Here the class size is only 25 members; the need for an opt-in class is one more indication that joinder is more appropriate than creation of a class. Because an "opt-in" arrangement requires class members to signify that they wish to pursue this action and will be bound by it, it is essentially joinder without any of the responsibilities and burdens that ordinarily attend personal participation: for example, paying costs and being deposed.

Given all the problems discussed above—the small number of class members, plaintiff's atypical position as underwriter for the private placement, and the need to employ a special form of class action, and even conceding that common questions of law or fact predominate over any such questions that affect only individual members,[3] the combination of these problems, no one of which standing alone would necessarily require denial of class certification, virtually mandates rejection of the class action form here.

Plaintiff's motion for class certification is denied.

SO ORDERED.

---

3. Defendants have argued that the individual class members relied on varying oral presentations made by Container officials at individual presentations. Plaintiff rests on its conclusory argument that none of the oral communications differed in any way from the information contained in the private placement memorandum. Although Bregman and Hyman Katz of Container did meet with individual corporate or institutional investors (Bregman Aff. at ¶ 3, Benson Dep. at 282), defendants have not presented any admissible evidence that the statements varied from meeting to meeting. (Anthony Herbert Dep. at 2, "I cannot recollect [whether oral statements varied from meeting to meeting].");
*cf. Seiler,* 102 F.R.D. at 889. However, defendants have shown that a good deal of information was transmitted orally; plaintiff has offered no admissible evidence showing that these oral communications were always the same; and the burden is on *plaintiff,* not defendants, to prove that each of the prerequisites of Rule 23 is met. *Greenspan,* 78 F.R.D. at 131; *Lloyd,* 454 F.Supp. at 811–12, *see also Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 571 (2d Cir.) (plaintiffs are "obligate[d] to rest certification ... on something more than pleadings"), *cert. denied,* 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982). Therefore, it would seem that plaintiff has failed also to show commonality under Rules 23(a) and 23(b)(3).