**Vicente DEL FIERRO Jr., for himself and in behalf of Coalition 349 Inc., Plaintiff,**

v.

**PEPSICO INTERNATIONAL, Defendant.**

**No. 94 CV 5780.**

United States District Court, E.D. New York.

Aug. 29, 1995.

---

Antonio M. Flores, Jamaica Estates, NY, for plaintiff.

Jones, Day, Reavis & Pogue (Chester Hinshaw, Patricia Villareal, of counsel), Dallas, TX and (Kenneth Puhala, of counsel), New York City, for defendant.

NICKERSON, District Judge:

Plaintiff, a Philippine resident and citizen, brings this diversity suit on behalf of himself and a consumer group he heads in the Philippines against PepsiCo Inc., incorrectly sued as "PepsiCo International" ("PepsiCo"), alleging breach of contract in connection with a promotional "instant-cash" game conducted by PepsiCo in the Philippines.

PepsiCo moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), (2) and (6), for lack of subject matter jurisdiction, standing, and personal jurisdiction. In the alternative, PepsiCo asks the court to decline jurisdiction over a foreign class.

I

The complaint alleges, in substance, the following.

In approximately February of 1992 PepsiCo, with the assistance of an "international promotions consultant" and a New York advertising firm and through its Philippine

bottler, launched the "Number Fever Game," a promotion directed at consumers in the Philippines.

The Number Fever Game offered consumers the chance to win instant cash prizes. Plaintiff says that, according to the publicized rules, the inside of each Pepsi bottle cap was marked with a three-digit number and a potential prize amount, ranging from one thousand Pesos (P1,000) to one million Pesos (P1,000,000). During the period that the game ran, the exchange rate was thirty Pesos to one U.S. dollar. Each day of the game, PepsiCo would announce a new winning number. A person who had a bottle cap with the same three-digit number as the one announced would win whatever prize amount was marked on that cap.

On May 22, 1992 PepsiCo announced that the winning number was 349. Because of an error, far more consumers than intended or anticipated by PepsiCo held bottle caps containing the number 349 and listing various cash prizes.

PepsiCo refused to honor the bottle caps printed with "349," despite consumers' attempts to claim their prizes. PepsiCo says predetermined security codes were also printed under each bottle cap, and that PepsiCo used that code to establish the true winners. Plaintiff says the rules did not mention the matching security code as a precondition to winning.

Plaintiff says the Number Fever Game was a contract between PepsiCo and all participating consumers, and PepsiCo breached that contract by refusing to redeem the "winning" bottle caps.

Plaintiff Vicente Del Fierro Jr., who holds at least one bottle cap, sues on behalf of himself and a consumer group called "Coalition 349." Plaintiff is president of Coalition 349 and says the group is comprised of "several thousand of winners of Pepsi's 'Number Fever Game.'" He seeks $400,000,000 in actual damages, $1,000,000 in "moral and exemplary" damages, and attorneys fees and costs.

The affidavit of Alexander Poblador, Philippine counsel for PepsiCo, states the following additional facts relevant to this motion.

PepsiCo Inc.–Philippine Branch ("PepsiCo–Philippines") is PepsiCo's office in the Philippines. Pepsi–Cola Far East Trade Development Co., Inc. ("PepsiCo Far East"), PepsiCo's concentrate supplier, and Pepsi–Cola Products Philippines, Inc. ("PepsiCo Products"), PepsiCo's Philippine bottler, are Philippine corporations. Poblador Aff. in Supp. of Mot. to Dismiss, ¶ 4.

Both PepsiCo–Philippines and PepsiCo Products developed the Number Fever Game, with the assistance of a New York advertising agency. Before implementing the promotion they received approval from the Department of Trade and Industry, a Philippine government agency regulating sales promotions, and from the Advertising Board of the Philippines. Poblador Aff. ¶¶ 5–7.

A consulting firm in Mexico developed the plan for selecting and placing non-winning and winning numbers under the bottle caps, and PepsiCo says that it was an error by that firm that caused so many caps to be mistakenly marked with the winning number 349. Poblador Aff. ¶ 9.

## II

■ On a motion to dismiss, plaintiff bears the burden of making a *prima facie* showing that the court has subject matter jurisdiction. *See, e.g., Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994); *Pariente v. Scott Meredith Literary Agency, Inc.,* 771 F.Supp. 609, 613 (S.D.N.Y.1991). PepsiCo says plaintiff has not established diversity jurisdiction under 28 U.S.C. § 1332.

The complaint adequately alleges diversity of citizenship. Plaintiff is a Philippine citizen and resident, and PepsiCo is incorporated and has its principal place of business in the United States. 28 U.S.C. § 1332. But that section also requires that the amount in controversy exceed $50,000. *Id.*

■ Plaintiff's complaint purports to bring this action "for himself and in behalf of Coalition 349" and alleges that the claims of members of Coalition 349 "total more or less $400,000,000." Nevertheless, this allegation

does not satisfy the amount in controversy requirement for several reasons.

Plaintiff has no standing to assert claims on behalf of Coalition 349 or its individual members. As the Supreme Court has concluded, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). *See also, In re Application of Dow Jones & Co.,* 842 F.2d 603, 606 (2d Cir.1988), *cert. denied,* 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988).

The present complaint asserts only plaintiff's individual claim, and the court reviews that claim to determine if it meets the $50,000 amount in controversy requirement.

The complaint does not allege the value of plaintiff's own claim. PepsiCo notes that, according to one newspaper article, plaintiff "holds a 1–million–peso bottle cap." *See* Aff. of Chester J. Hinshaw in Supp. of Mot. to Dismiss, Exh. B. PepsiCo says one million Pesos were worth $41,528 on December 16, 1994, the day plaintiff filed this action, *see Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir.1982) (amount in controversy determined as of time action is commenced).

But according to plaintiff's counsel, plaintiff "holds 30 [bottle caps] in his own name worth P1,000,000 each for a total value of P30,000,000, or $1,245,840." *See* Pl.'s Mem. in Opp. to Mot. to Dismiss.

PepsiCo submits an earlier affidavit from plaintiff, in which he stated that "[t]hese [30] caps were previously owned by my children and some were given to me by friends and relatives." *See* Hinshaw Reply Aff., Exh. A (Del Fierro Aff., ¶ 6). Under Philippine law plaintiff does not own the right to commence or maintain an action based on bottle caps given to him, unless the transferors of those caps have assigned the right of action through public, properly notarized instruments. *See* Reply Aff. of Alexander J. Poblador in Supp. of Mot. to Dismiss, ¶ 4 (citing Article 1625 of the Civil Code of the Philippines (Republic Act No. 386, as amended [1949] )).

PepsiCo thus argues, and the court agrees, that without producing evidence of properly executed assignments plaintiff cannot count caps given to him after the number "349" was selected to satisfy the amount in controversy requirement.

Plaintiff's complaint also seeks moral and exemplary damages in the amount of $1,000,-000, apparently on behalf of plaintiff and the "several thousands" of Coalition 349 members. The court cannot determine with certainty what amount of punitive damages plaintiff seeks on his own behalf. But even assuming that there are only 2,000 members of Coalition 349 (the lowest possible estimate of the "several thousands" claimed by plaintiff), the court concludes that plaintiff's punitive damages claim would amount to no more than $500 for each member. Thus plaintiff has not established that his claim meets the $50,000 jurisdictional minimum.

Plaintiff's counsel says that he intended to bring this action on behalf of a class of bottle cap holders in the Philippines, and that he forgot to check the class action box on the cover sheet. But the complaint does not mention that it is intended as a class action, nor does it allege the requisite elements of a class under Federal Rule of Civil Procedure 23. In particular, the complaint fails to allege that each member of the purported class meets the amount in controversy requirement.

Moreover, the court is reluctant to grant leave to amend the complaint to plead a class action. The court is concerned about, among other things, potential problems of proof as to the amount in controversy. PepsiCo has submitted an article from the May 1995 edition of the Coalition 349 newsletter titled "Joint Claims Needed to Fit with US Suit." The article advises members of Coalition 349 that

> Joint claims may have to be forged within claimants to fit within the requirement of the US court as mentioned in the move of PepsiCo to dismiss te [sic] claims.

> This means that those with less than 2 million pesos claim may have to be combined with another claimant and agree on

one single name for the US court requirements.

*See* Supp.Aff. of Alexander J. Poblador.

The court assumes that plaintiff's counsel would not knowingly take part in a fraud on the court. The court nevertheless is wary about the ability of counsel, who is located in the United States, to monitor properly the activities of Coalition 349 and to make sufficient pre-filing inquiries so as to avoid the risk of sanctions under Federal Rule of Civil Procedure 11.

The court could perhaps grant plaintiff leave to amend the complaint to attempt to state a class action, and require additional forms of proof to establish the amount in controversy for each class member. But it would be fruitless to do so if the court is convinced that it should decline to exercise jurisdiction over a foreign class under the doctrine of forum non conveniens.

## III

■ The court has discretion in deciding whether to dismiss a case for forum non conveniens. While there is a strong presumption in favor of a plaintiff's choice of forum, dismissal for forum non conveniens may be appropriate when certain "private interest factors" affecting the convenience of the litigants and "public interest factors" affecting the convenience of the court "point towards trial in the alternative forum." *Piper Aircraft Company v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). Moreover, "the presumption applies with less force when the plaintiff or real parties in interest are foreign." *Id.; see also, Allstate Life Insurance Co. v. Linter Group Ltd.,* 994 F.2d 996, 1001 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993).

■ Under the doctrine of forum non conveniens, the court should consider such private and public interest factors as: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; (3) all other practical problems affecting the ease, efficiency, and expense of a trial; (4) the enforceability of a judgment; (5) the local interest in having localized controversies decided at home; and (6) the interest in avoiding problems raised by the application of foreign law. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6; *Allstate,* 994 F.2d at 1001.

These considerations are not exclusive. Rather, " '[e]ach case turns on its facts.' " *Piper,* 454 U.S. at 249, 102 S.Ct. at 263 (quoting *Williams v. Green Bay & Western R. Co.,* 326 U.S. 549, 557, 66 S.Ct. 284, 288, 90 L.Ed. 311 (1946)).

■ The court has considered all of the relevant public and private interest factors, and determines that practically all of them militate against allowing plaintiffs to litigate in this forum.

Most of the events forming the basis of the litigation occurred in the Philippines. Two Philippine based PepsiCo affiliates—PepsiCo–Philippines and PepsiCo Products—developed and implemented the game concept. Although the advertising firm PepsiCo used is based in New York, the advertising campaign took place in the Philippines. The Philippine Department of Trade and Industry and the Advertising Board of the Philippines reviewed and approved the promotion. Most of the consumers who participated in the Number Fever Game presumably are citizens and residents of the Philippines. According to PepsiCo, a consulting firm in Mexico, which handled the selection of winning and non-winning numbers, allegedly caused the error that is the focus of this litigation. Thus it appears that most witnesses and other sources of proof are located in the Philippines, or otherwise located outside the United States. Indeed, plaintiff has not established that any of the relevant evidence in this case is located in the United States.

Because both the formation and breach of the alleged contract took place in the Philippines, the Philippines has the greatest interest in this litigation. Thus Philippine law likely would govern the substantive issues in this action. *See Hutner v. Greene,* 734 F.2d 896 (2d Cir.1984) (applying New York's "par-

amount interest" test to determine choice of law); *Flexi–Van Leasing, Inc. v. Pharos Lines, S.A.,* 808 F.Supp. 237 (S.D.N.Y.1992). The court's lack of familiarity with Philippine law is a further consideration weighing in favor of dismissal. *See, e.g., Piper,* 454 U.S. at 260, 102 S.Ct. at 268; *Calavo Growers of California v. Belgium,* 632 F.2d 963 (2d Cir. 1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981).

Moreover, a judgment in favor of PepsiCo would not inevitably have *res judicata* effect in the Philippines. Section 50, Rule 39 of the Philippine Rules of Court provides that "[i]n case of a judgment [by a tribunal of a foreign country] against a person, the judgment is presumptive evidence ... but the judgment may be repelled by evidence of a want of jurisdiction, want of notice to the party, collusion, fraud, or clear mistake of law or fact." Section 50, Rule 39, Philippine Rules of Court.

Thus a judgment for PepsiCo would not bar foreign class members from relitigating the same issues in the Philippines by asserting, for example, that this court did not have jurisdiction, that particular class members did not receive adequate notice, or that this court's judgment was based on a clear mistake of fact or law.

Defendants who "prevail against a class ... are entitled to a victory no less broad than a defeat would have been." *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 996 (2d Cir.1975), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975). *See also, CL–Alexanders Laing & Cruickshank v. Goldfeld,* 127 F.R.D. 454, 459 (S.D.N.Y.1989). While the court need not dismiss the action on this ground alone, the inadequacy of the opt-out class action procedure of Federal Rule of Civil Procedure 23(c)(2) to ensure the enforceability of a judgment for PepsiCo further supports dismissal.

In addition, there are approximately 2,300 civil cases pending in the Philippines against PepsiCo–Philippines and/or PepsiCo Products, all arising from the same set of facts as those before this court.

Plaintiff says that if he is not able to sue PepsiCo in this country PepsiCo will think "that it could get away with anything as long as such events did not occur in the United States." Plaintiff's fear that PepsiCo would heed a ruling only from a United States court is insufficient reason, in light of the factors already discussed, to allow the action to continue here. This court will not assume that the Philippines has no substantial interest in the outcome of the litigation, that is, an interest in ensuring that American companies and their subsidiaries are deterred from breaching contracts they make with Philippine citizens.

Moreover, the possibility that the law of the alternative forum may be less favorable to plaintiffs "should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry," *Piper,* 454 U.S. at 247, 102 S.Ct. at 261, because the "central focus of the forum non conveniens inquiry is convenience...." *Id.,* 454 U.S. at 249, 102 S.Ct. at 262.

The court concludes that trial in plaintiff's chosen forum "imposes a heavy burden on [both] the defendant [and] the court, and [that] the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Id.,* 454 U.S. at 249, 102 S.Ct. at 262.

## IV

The court dismisses the action, subject to the conditions that PepsiCo (1) consent to the jurisdiction of the courts of the Philippines; and (2) agree to waive any defenses it may have based on the statute of limitations. *See, e.g., Sussman v. Bank of Israel,* 801 F.Supp. 1068, 1079 (S.D.N.Y.1992), *aff'd,* 990 F.2d 71 (2d Cir.1993); *In re Union Carbide Corp. Gas Plant Disaster at Bhopal,* 634 F.Supp. 842, 867 (S.D.N.Y.1986), *modified in part,* 809 F.2d 195 (2d Cir.1987).

So Ordered.