**Murtuza ANSARI, Plaintiff,**

v.

**NEW YORK UNIVERSITY, New York University College of Dentistry, Edward G. Kaufman, William Greenfield, Leo Taft and John Doe(s), Defendants.**

No. 96 Civ. 5280(MBM).

United States District Court,
S.D. New York.

April 20, 1998.

New York University College of Dentistry (the "College"), Edward Kaufman, William Greenfield, and Leo Taft for failing to provide certain educational services in connection with an orthodontics training course in which he participated. Ansari now moves under Fed.R.Civ.P. 23(a) and 23(b)(3) to certify this case as a class action. For the reasons stated below, the motion is denied.

## I.

The facts underlying this action are fully set forth in an earlier opinion, *see Ansari v. New York University,* No. 96 Civ. 5280, 1997 WL 257473, at *1-2 (S.D.N.Y. May 16, 1997), and will be restated here only as necessary. NYU is a New York corporation that owns and controls the College. (Compl. ¶ 5) Kaufman is the Dean and Greenfield the Associate Dean of the College. (*Id.* ¶¶ 6-7) Taft was Director of the College's 1995 Orthodontic Program (the "program"), a one-year program for foreign dentists. (*Id.* ¶ 8) Ansari, a citizen of India on a temporary visa in the United States, was one of 35 other dentists from 11 foreign countries who enrolled in the program. (*Id.* ¶¶ 10, 13; Ansari Aff. ¶ 5 & Exs. A, B) The program cost about $30,000 per person. (Ansari Aff. ¶ 4)

The thrust of Ansari's complaint is that, in written and oral communications to prospective students, defendants made certain promises about the program that they did not fulfill. For example, Ansari alleges that, although the program's promotional literature guaranteed the "most sophisticated, state-of-the-art clinical facilities" of any dental school in the country, the program was held in a poorly equipped, unsanitary "urban warehouse." (Compl. ¶¶ 16(b), 18(a)-(b)) In addition, Ansari alleges that defendants promised that prospective students would receive seven hours of instruction per day, one-on-one faculty advising, experience with a "diversified patient population," and eventual membership in a national orthodontics association. (*Id.* ¶¶ 16(a)-17(c)) According to the complaint, these promises also went unfulfilled.

Ansari sued defendants for negligent misrepresentation, breach of contract, and viola-

Todd J. Krouner, New York City, for Plaintiff.

Ada Meloy, S. Andrew Schaffer, New York City, for Defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

In this diversity action, Dr. Murtuza Ansari sues New York University ("NYU"),

tion of § 349(a) of New York's General Business Law.[1] (*Id.* ¶¶ 20–21) In my prior opinion, I granted defendants motion to dismiss the negligent misrepresentation claim, but denied their motion to dismiss the claims for breach of contract or violation of the state statute. *See Ansari*, 1997 WL 257473, at *2–6. Ansari now moves to certify a class of plaintiffs composed of the 35 dentists who participated in the program.

## II.

Rule 23 sets forth a two-step analysis for determining whether a class action is appropriate. First, a plaintiff must satisfy Rule 23(a) by showing that: (1) the proposed class is so numerous that joinder of all class members is impracticable; (2) there are questions of law or fact common to the class; (3) his claims are typical of the claims of those of the class members; and (4) he will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a). Second, the plaintiff must establish that the proposed class falls within one of the three subsections of Rule 23(b). *See* Fed.R.Civ.P. 23(b)(1)–(3). Here, Ansari relies on the third subsection, which authorizes a class action only if: (1) the questions of law or fact common to the class predominate over those unique to its individual members; and (2) the class action is superior to other available forms of adjudication. *See* Fed.R.Civ.P. 23(b)(3).

■ The burden of proving each of the requisite elements of Rule 23 is on the party seeking certification, and failure to prove any element precludes certification. *See Amchem Products, Inc. v. Windsor*, — U.S. —, —, —, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir.1997); *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993). Although "Rule 23 is given liberal rather than restrictive construction," *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (per curiam) (quotations omitted), the Supreme Court has held that court must undertake a "rigorous analysis" to determine whether the movant has met his burden of proving that the rule has been satisfied. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

In this case, Ansari's motion for class certification suffers from at least two defects. First, Ansari has not demonstrated that his proposed class is so numerous that joinder is impracticable. *See* Fed.R.Civ.P. 23(a)(1). Second, a class action may not be superior to other forms of adjudication under the circumstances of this case. *See* Fed.R.Civ.P. 23(b)(3)(2). These issues will be addressed in turn.

### A. *Failure to Prove Numerosity*

■ Under the first prong of Rule 23(a), a plaintiff must show that the proposed class is so numerous that joinder of each member is impracticable. *See* Fed.R.Civ.P. 23(a)(1). Generally speaking, courts will find that the "numerosity" requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer. *See Town of New Castle v. Yonkers Contracting Co.*, 131 F.R.D. 38, 40 (S.D.N.Y.1990); 5 James Wm. Moore et al., *Moore's Federal Practice*, § 23.22[3][a] (3d ed.1997) (hereinafter "Moore's"); *see also Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.), *cert. denied*, 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995). However, these are not rigid parameters, and the ultimate issue is whether the class is too large to make joinder practicable. *See Strykers Bay Neighborhood Council v. City of New York*, 695 F.Supp. 1531, 1538 (S.D.N.Y.1988); *Abdul–Malik v. Coombe*, No. 96 Civ. 1021, 1996 WL 706914, at *1 (S.D.N.Y. Dec. 6, 1996) ("practicability [of joinder] does not depend on mere numbers").

■ In deciding this issue, particularly in cases falling into the gray area between 21 and 40 class members, courts must consider factors other than class size. *See Jackson v. Foley*, 156 F.R.D. 538, 542 (E.D.N.Y.1994). These factors include: (1) the judicial econo-

---

**1.** That statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service...." N.Y.Gen.Bus.Law § 349(a) (McKinney 1988).

my that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993); *see also* Moore's, § 23.22[2] (listing factors).

In this case, the parties recognize that the proposed class of 35 members falls within the gray area identified above. (Pl.Mem. at 4–5; Def.Mem. at 4) Predictably, they disagree about what to make of this recognition. Ansari argues that the proposed class is near the level at which most courts find numerosity and that the circumstances of this case, particularly the geographic dispersion of the class members, tip the scale in favor of such a finding. (Pl.Mem. at 4–6) Defendants argue that the circumstances of this case, particularly the incentive and ability of individual class members to protect their own interests, demonstrate that joinder is practicable. (Def.Mem. at 4–9) On balance, and upon consideration of the factors identified in *Robidoux*, I agree with defendants.

First, there is no evidence that permitting this suit to go forward as a class action is necessary to avoid a multiplicity of redundant lawsuits. *See Robidoux*, 987 F.2d at 936. This is not a situation where individual members of the prospective class have filed or threatened to file their own actions. In fact, two years have elapsed since completion of the program, during which time no dental student other than Ansari has brought suit against defendants.

Second, although the proposed class is geographically dispersed, and this dispersion weighs in favor of finding that joinder is impracticable, *see id.*, dispersion is not dispositive. *See Block v. First Blood Assocs.*, 125 F.R.D. 39, 42 (S.D.N.Y.1989). Moreover, it bears mention that Ansari was a classmate of the individuals he seeks to represent (Compl. ¶ 2) and currently has or is capable of obtaining recent addresses of most if not all of them. (Ansari Aff.Ex. B; Compl. ¶ 13) Although knowledge of the whereabouts of proposed class members does not automatically make joinder practicable, *see Shankroff v. Advest, Inc.*, 112 F.R.D. 190, 192 (S.D.N.Y. 1986), it should provide comfort to Ansari who, if he so chooses, can contact each of his former classmates, apprise each of his lawsuit, and invite each to join. *See Giullari v. Niagara Falls Mem'l Med. Ctr.*, No. 96–CV– 0271, 1997 WL 65862, at *3 (W.D.N.Y. Feb. 5, 1997).

Third, there is no evidence that the prospective class members lack the financial resources to participate in Ansari's lawsuit. *See Robidoux*, 987 F.2d at 936. Each of the students that took part in the program is a licensed dentist who had the resources both to study abroad and to pay the $30,000 tuition for the program. One can reasonably infer that, like Ansari, each has the wherewithal to retain an attorney either to join in the pending action or to file a separate suit, should he or she wish to do so. *Cf. id.* (upholding class certification where members were "economically disadvantaged"); *Jackson*, 156 F.R.D. at 542 (members came from "extremely low income households"); *McDonald v. Heckler*, 612 F.Supp. 293, 300 (D.Mass.1985) (members were "disabled and of low income").

Fourth, and for similar reasons, the prospective class members have the ability to bring individual suits, should they choose to do so. *See Robidoux*, 987 F.2d at 936. This is not a situation where the class members are incarcerated, *see United States ex. rel. Walker v. Mancusi*, 338 F.Supp. 311, 315–16 (W.D.N.Y.1971), *aff'd*, 467 F.2d 51 (2d Cir. 1972), unsophisticated, *see Rodriguez ex rel. Rodriguez v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009, 1014 (W.D.Mich.1987), or elderly. *See Sherman v. Griepentrog*, 775 F.Supp. 1383, 1389 (D.Nev.1991). Rather, the prospective class consists of educated professionals who, although foreigners, spent at least a year living and studying in the United States.

Nor is this a case where the prospective class members lack a monetary incentive to protect their own interests. *See Amchem*, 117 S.Ct. at 2246 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries

do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quotations omitted); *see also* Moore's, § 23.22[5]. Assuming that each member of the proposed class has a claim similar to Ansari's—as he himself urges (Pl. Mem. at 7–8)—then each could expect to recover the amount of the tuition, $30,000, plus the opportunity cost of having attended the program, which Ansari estimates at about $60,000 for himself. (Compl. ¶ 3) A potential award of around $90,000 is hardly the type of de minimis recovery that would discourage individual class members from joining Ansari's suit or from filing suits in their own behalf. *See Amchem,* 117 S.Ct. at 2246.

■ Finally, Ansari does not seek prospective relief of the sort that will have an effect on "future class members." *See Robidoux,* 987 F.2d at 936. This issue most frequently arises when a plaintiff wants to certify a class that includes persons who may be injured in the future and who are, therefore, impossible to identify in the present. *See Bruce v. Christian,* 113 F.R.D. 554, 557 (S.D.N.Y.1986). In such cases, joinder is not practicable "because parties who have not yet been injured, or who do not know that they have been injured, are unlikely to join a lawsuit." Moore's, § 23.22[7]. Here, by contrast, the class Ansari seeks to certify consists of a finite number of people all of whom are identifiable and all of whom have been injured, if at all, in the past. Accordingly, although Ansari seeks to enjoin the defendants from further engaging in "false or deceptive practices" (Compl. ¶ 29(d)), that prospective relief does not involve and will not have an impact on the group he seeks to represent.

Thus, at least four of the factors identified in *Robidoux* counsel against a finding that joinder is impracticable. The only factor that supports such a finding—the geographic dispersion of the class members—is mitigated by Ansari's ready ability to contact the prospective class members. Accordingly, I find that joinder is not impracticable and, therefore, that Ansari has failed to satisfy the numerosity requirement of Rule 23(a)(1).

### B. *Class Action May Not Be Superior*

■ There is a second defect in Ansari's motion for certification, which, although not as significant as the failure to satisfy the numerosity requirement, buttresses the conclusion that class certification is inappropriate in this case. A party seeking certification under Rule 23(b)(3) must demonstrate that the class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). One of the factors that must be considered in analyzing this "superiority" requirement is whether the judgment in the class action will have a res judicata effect in future litigation. *See CL–Alexanders Laing & Cruickshank v. Goldfeld,* 127 F.R.D. 454, 459 (S.D.N.Y.1989); *cf. Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 996–97 (2d Cir.), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975) (considering res judicata in context of pendent class action suit). This is usually not an issue when the class members are United States citizens, as courts in this country recognize the preclusive effect of a fairly noticed class action suit.

■ However, it becomes an issue when, as here, the members of the prospective class are foreigners and conceivably could file separate suits against the defendants in the courts of their home countries. In those circumstances, the question arises whether the foreign courts will recognize the preclusive effect of an "opt-out" class action of the sort contemplated by Rule 23(b)(3). *See* Fed.R.Civ.P. 23(b)(c)(2) (in class action certified under Rule 23(b)(3), members must affirmatively request to be excluded); *see, e.g., In re Lloyd's American Trust Fund Lit.,* No. 96 Civ. 1262, 1998 WL 50211, at *15–16 (S.D.N.Y. Feb. 6, 1998). If the foreign court would refuse to recognize the preclusive effect of such an action, this fact, although not dispositive, counsels against a finding that the class action is superior to other forms of litigation. *See CL–Alexanders Laing & Cruickshank,* 127 F.R.D. at 459.

■ Here, the parties have not submitted any affidavits on what preclusive effect, if any, a Rule 23(b)(3) class action will have in the various countries of which the prospec-

tive class members are citizens.[2] *See* Fed. R.Civ.P. 44.1 (permitting submission of materials on question of foreign law). However, what limited caselaw there is on this issue suggests that at least six of the prospective class members are residents of countries that would not accord preclusive effect to class action Ansari proposes. *See Bersch,* 519 F.2d at 996–97 (Great Britain, Italy and Germany); *Del Fierro v. Pepsico Int'l,* 897 F.Supp. 59, 64 (E.D.N.Y.1995) (Philippines); *but see Frietsch v. Refco, Inc.,* No. 92 C 6844, 1994 WL 10014, at *11 (N.D.Ill. Jan. 13, 1994) (in view of conflicting affidavits, "it is far from clear" that German courts would allow relitigation of claims). Although doubts as to the propriety of certification are to be resolved in favor of allowing the class action, *see Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3rd Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 343, 88 L.Ed.2d 290 (1985), where, as here, those doubts exist side-by-side with the plaintiff's failure to demonstrate a requisite element of Rule 23, they properly may be considered as further evidence that class certification is inappropriate.

\*  \*  \*  \*  \*  \*

For the above reasons, Ansari's motion to certify this case as a class action is denied.

SO ORDERED.

**2.** Defendants have offered to submit such materials if necessary. (Def.Mem. at 20 n. 3)