Lydia **LEE** and Carolyn Bissonette, individually and on behalf of others similarly situated, Plaintiffs,

v.

**ENTERPRISE LEASING COMPANY–WEST, LLC, a Delaware LLC; and Vanguard Car Rental USA, LLC, a Delaware LLC, Defendants.**

No. 3:10–CV–00326–LRH–WGC.

United States District Court, D. Nevada.

Signed June 25, 2014.

Shoshana T. Savett, Arthur Stock, Berger & Montague, P.C., Philadelphia, PA, G. David Robertson, Richard D. Williamson, Robertson, Johnson, Miller & Williamson, Reno, NV, for Plaintiffs.

Dan C. Bowen, Bowen Hall Ohlson & Osborne, Reno, NV, Gregory D. Call, J. Daniel Sharp, Janine L. Scancarelli, Crowell & Moring LLP, San Francisco, CA, for Defendants.

## ORDER

LARRY R. HICKS, District Judge.

Before the Court is Plaintiffs Lydia Lee ("Lee") and Carolyn Bissonette's ("Bissonette") (collectively "Plaintiffs") Motion to Certify Class. Doc. # 79.[1] Defendants Enterprise Leasing Company–West, LLC ("Enterprise") and Vanguard Car Rental USA, LLC's ("Vanguard") (collectively "Defendants") filed a Response (Doc. # 82), to which Plaintiffs replied (Doc. # 96).

## I. Factual Background

This is a putative class action filed on behalf of persons who rented cars from Enterprise and Vanguard in the State of Nevada. Although involving different parties, the action involves substantially the same claims and issues that are presented in a separate case currently pending before this Court, *Sobel v. Hertz Corp.*, No. 3:06–CV–545–LRH–RAM. As in *Sobel*, the dispute in this case centers on whether Nevada Revised Statute ("NRS") 482.31575, prior to amendment on October 1, 2009, allowed Defendants to charge customers a separate airport concession recovery fee that was not included in the base rental rate as advertised and quoted to customers.[2]

The material facts at issue herein are largely undisputed. In order to operate "on-

---

1. Refers to the Court's docket number.

2. As amended, NRS 482.31575 now expressly permits this practice.

airport," McCarran International Airport ("McCarran") in Las Vegas, Nevada, and Reno–Tahoe International Airport ("RTI") in Reno, Nevada, require rental car companies, including Defendants, to pay a "concession fee" of ten percent of their gross revenue received there.[3]  Doc. # 74, ¶¶ 6, 11; Doc. # 85, ¶¶ 6, 11.  These fees are set by contractual agreements called "Concession Agreements."  Doc. # 65 (Walker Decl.), ¶ 9; Doc. # 66 (Best Decl.), ¶¶ 11, 16, 17, Ex. A, Ex. B, Ex. C, Ex. D. Individual lessees are not party to those agreements.  Doc. # 74, ¶¶ 6, 11; Doc. # 85, ¶¶ 6, 11.  Although the airports impose this fee on rental car companies, as opposed to their customers (i.e., the short-term lessees), Defendants pass along the expense to their customers by imposing a ten-percent surcharge on the base rental rate as a so-called "airport concession recovery fee" ("ACRF").[4]  Doc. # 74, ¶¶ 9, 14; Doc. # 85; ¶ 9, 14.  At all relevant times, Defendants "unbundled" the ACRF from their base rental rates.  Doc. # 74, ¶ 16; Doc. # 85, ¶ 16.  In essence, Defendants advertised and quoted to customers a base rental rate that did not include the separate ACRF that Defendants ultimately charged their customers. *Id.*

## II.  Legal Standards

To qualify for class certification, the class must meet the requirements of Rule 23(a), and at least one requirement of Rule 23(b). Fed. Judicial Center, *Manual for Complex Litigation* § 21.131 (4th ed. 2004); Fed. R.Civ.P. 23(a), (b).  The proponents of the class bear the burden of demonstrating that all the prerequisites for class designation are met.  *See In re No. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir.1982).  "The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Wal-Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551–52, 180 L.Ed.2d 374 (2011) (quotation marks and citation omitted).

### 1.  Rule 23(a) Requirements

Rule 23(a) states four threshold requirements applicable to all class actions.  Rule 23(a) provides in full:

> ***Prerequisites.*** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;  and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

The Supreme Court refers to these elements as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

---

**3.**  When NRS 482.31575 went into effect in October 1989, Vanguard, operating as Alamo Rent–a–Car ("Alamo"), was operating as an "off-airport" rental car company from a privately owned location near McCarran.  Doc. # 66 (Best Decl.), ¶ 9. Enterprise began operating as an off-airport rental car company near McCarran in 1990. *Id.* In 2002, Defendants independently went on-airport at McCarran. *Id.*, ¶ 11. In January 1998, Alamo began operating on-airport at RTI. *Id.*, ¶ 16.  Enterprise began operating on-airport at RTI in May 2002. *Id.*, ¶ 17.

To the extent Defendants dispute whether all on-airport car rental companies in Nevada were subject to a minimum annual guarantee (Doc. # 85, ¶ 6), the Court finds resolution of this issue, as well as any dispute regarding the exact percentage of gross revenues constituting the concession fee at various Nevada airport locations, to be immaterial to a determination of the present Motion to Certify Class.

**4.**  On April 1, 2006, Lee rented a car from Enterprise at McCarran in Las Vegas, Nevada.  Doc. # 74, ¶ 3; Doc. # 85, ¶ 3. In addition to the base rental rate, Enterprise charged an additional $7.92, which Enterprise described on her rental documents as an "AP/Access 10.000%." *Id.* Similarly, on February 24, 2008, Bissonette rented a car from Alamo, at McCarran in Las Vegas, Nevada. Doc. # 74, ¶ 5; Doc. # 85, ¶ 5. In addition to the base rental rate, Bissonette was charged a "Concession Recovery Fee @10.000%" in the amount of $40.60. *Id.*

### 2. Rule 23(b) Requirements

In addition, Plaintiffs must satisfy the requirements under Rule 23(b)(1), (2), or (3) in order to maintain a class action. Under Rule 23(b)(3)—the subsection chosen by Plaintiffs—certification is appropriate if the court finds that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

### III. Discussion

#### A. Rule 23(a)

Under Rule 23(a), Defendants challenge Plaintiffs' ability to establish typicality and adequacy of representation. The Court briefly addresses the undisputed Rule 23(a) requirements—numerosity and commonality—before turning to the challenged requirements.

##### 1. Rule 23(a)(1)—Numerosity

■ Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Plaintiffs need not state exact figures; instead, they can satisfy the numerosity requirement by providing reasonable estimates. *See In re Rubber Chemicals Antitrust Litigation*, 232 F.R.D. 346, 350 (N.D.Cal.2005).

Here, the class period spans over five years in the case of Enterprise and over two years in the case of Vanguard. Because it was Defendants' standard practice to unbundle the ACRF, the class would likely include nearly every renter during this time period. Defendants have identified over 1 million individuals as putative class members in connection with the failed Settlement Agreement.[5] *Sobel v. Hertz Corp.*, No. 3:06–cv–00545–LRH–RAM, Doc. # 181 (Andra Decl.), ¶ 9. This number is large enough to make

joinder impracticable. *See Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y.1998) ("courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members"). Accordingly, the Court finds that the numerosity element is satisfied.

##### 2. Rule 23(a)(2)—Commonality

■ In order to satisfy the commonality element, Plaintiffs must show that there are questions of law or fact which are common to the class. The Ninth Circuit has described the commonality element as follows:

> Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). In this case, there are common issues of both fact and law. The putative class members' claims all arise out of Defendants' standard practice of advertising, quoting, and charging unbundled ACRFs at Nevada airports. Moreover, the putative class members' claims implicate common legal questions with respect to the unbundled ACRFs, the resolution of which turn on the Court's interpretation of NRS 482.31575. Thus, because the class members' claims arise from a standard practice and implicate common legal questions, the Court finds that the commonality element is satisfied.

##### 3. Rule 23(a)(3)—Typicality

■ "Under the [Rule 23]'s permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* at 1020. Typicality exists where the claims of the named plaintiffs arise from the same event that gives rise to the claims of the other class members, and the named plaintiffs' claims

---

5. Factual determinations supporting a Rule 23 finding must be made by a preponderance of *admissible* evidence. *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 322–23 (3d Cir.2008). Fed.R.Evid. 408 prohibits the use of "statement[s] made during compromise negotiations about the claim" to establish the validity or

amount of the claim. However, Rule 408 does not prohibit the Court from considering Hertz's admission at the class certification stage because the Court is not determining liability or damages. *See In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1124 n. 20 (7th Cir.1979).

are based on the same legal theories as the other class members' claims. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992); *see also Hester v. Vision Airlines, Inc.,* 2009 WL 4893185, at *4 (D.Nev. Dec. 16, 2009), *aff'd* 687 F.3d 1162 (9th Cir.2012).

Here, the Court finds that Plaintiffs have satisfied the typicality requirement because their claims flow from the same standard practice and course of conduct that also gives rise to the claims of all other class members. In *Sobel,* the Court determined that the plaintiffs had satisfied the typicality requirement in nearly identical circumstances. *See Sobel v. Hertz,* 291 F.R.D. 525, 542 (D.Nev. 2013) (finding typicality where plaintiffs' claim "allege[d] that the charging of the unbundled ACRFs violated [NRS 482.31575]"). While the Court is keenly aware of the differences between *Sobel* and this case—*Sobel* concerned only one Defendant, one brand, and one named plaintiff for each of the two rentals at McCarran and RTI, while this case concerns two defendants, three brands, and only two named plaintiffs for up to five different airports—the Court finds them to be immaterial to a determination of whether Plaintiffs' claims are "reasonably co-extensive" with those of absent class members. Defendants contend that Plaintiffs have not shown that their claims are typical of renters: (1) who rented cars at other airports; (2) who bought optional products or services; and (3) who signed different rental agreements. The Court will address each of these issues in turn.

First, Defendants' argument that Plaintiffs' claims are not typical of class members who rented at other airports is without merit. Defendants support their assertion in this regard by arguing that the ACRFs differed from airport to airport as a result of the airports' various minimum concession fee contractual requirements. As the Court has stated on numerous occasions, Defendants' contractual obligation to pay concession fees—whether subject to a minimum amount or not—is irrelevant. *See, e.g.,* Doc. # 102, pp. 6–7, 24. Accordingly, any differences with respect to Defendants' contractual obligations to pay concession fees to the airports will not defeat typicality. Moreover, because the Court rejected Defendants' due process defense, which Defendants contend is unique to Plaintiffs because they rented from McCarran, this will not defeat typicality either. *See id.* at 10–20. Similarly, the Court rejects Defendants' assertion that different defenses apply to the claims of renters at airports other than McCarran as Defendants fail to offer any indication of what those defenses might be. Accordingly, the Court finds that Plaintiffs' claims are typical of class members who rented from Defendants at McCarran and RTI, as well as other airports in Nevada, including Henderson, North Las Vegas, and Elko.

Second, Defendants' argument that Plaintiffs' claims are not typical of class members who bought optional products and services is also without merit. Whether class members bought optional products and services has no bearing on whether they were charged a separate ACRF in addition to the base rate. Moreover, Plaintiffs concede that the portion of ACRFs attributable to optional products and services is not recoverable as restitution. *See* Doc. # 101, p. 14. As such, class members will only recover in restitution that portion of the ACRF attributable to gross revenue from car rentals. Any issues related to the proper method of calculating appropriate restitution based on Defendants' gross revenue from car rentals will not defeat typicality. *See Balasanyan v. Nordstrom, Inc.,* 294 F.R.D. 550, 561 (S.D.Cal.2013) (finding that issues affecting proper calculation of damages for individual plaintiffs were insufficient to defeat typicality). Accordingly, the Court finds that Plaintiffs' claims are typical of class members who were charged a separate ACRF, including those class members who bought optional products and services.

Third, the Court rejects Defendants' argument that Plaintiffs' claims are not typical of class members who entered into different rental agreements with Defendants. Whether the specific "severability" provision, upon which Plaintiffs rely in arguing for contract reformation, is present in every agreement does not affect typicality. Rather, the only relevant consideration in this regard is whether class members' contracts contained a provision requiring them to pay a separate

ACRF. The Court determined that restitution was an available remedy in these circumstances because the contractual provision requiring short-term lessees to pay a separate ACRF was unenforceable due to illegality. Doc. # 102, pp. 25–28. The Court did not rely on the "severability" provision in Plaintiffs' contract in reaching this conclusion. *Id.* at 27 n. 20. Accordingly, whether class members' contracts included a "severability" provision is irrelevant.

Finally, to the extent Defendants assert that Bissonette's claim is not typical of class members who rented from National, the Court is unpersuaded. The fact that Bissonette rented a car from Alamo, and does not recall having rented a car from National, is not relevant to the typicality analysis. Instead, the relevant question is whether the claims against Alamo and National arise from the same events and are based on the same legal theories. They are—the claims against both Alamo and National arise from exactly the same conduct and rely on exactly the same legal theory. That Alamo and National are different "brands" of the same legal entity and Defendant in this class action—Vanguard—will not defeat typicality. *See Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 377–78 (N.D.Cal.2010) (finding plaintiff's claims against all Blue Sky beverages to be reasonably co-extensive with those of absent class members, even where plaintiff did not buy each product in the beverage line, because all claims arose out of the same allegedly false statement, worded in several variations, on every Blue Sky beverage); *see also In re Chocolate Confectionary Antitrust Litig.,* 289 F.R.D. 200, 217 (M.D.Penn.2012) ("That customers paid different prices or purchased different brands of products does not defeat typicality.... 'When a class includes purchasers of a variety of products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types.' ") (quoting *Marcus v. BMW of North America, LLC,* 687 F.3d 583, 599 (3d Cir.2012) (collecting cases)). Finally, whether class members chose Alamo or National for different reasons has no bearing on the Court's determination of either liability or restitution. Accordingly, the Court finds that the typicality element has been satisfied.

### 4. Rule 23(a)(4)—Adequacy of Representation

■ The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class...." Fed.R.Civ.P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020.

Here, Defendants urge that certification of the proposed class must be denied because Bissonette, who rented from Alamo, is not an adequate representative of National renters. For the same reasons that Bissonette's claims are typical of the class, the Court finds that Bissonette's interests are coextensive with the entire Vanguard class, including those class members who rented from National. As such, the Court is satisfied that Bissonette and her counsel will prosecute this action vigorously on behalf of all class members. Furthermore, the Court is not aware of any conflicts of interest between either Plaintiffs or their counsel on one hand and the proposed class on the other. Accordingly, the Court concludes that both Lee and Bissonette are adequate representatives of the proposed class.

### B. Rule 23(b)(3)

In addition to satisfying Rule 23(a)'s requirements, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). Plaintiffs in this case seek certification under Rule 23(b)(3). Under that rule, certification is appropriate if the court finds that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). In evaluating superiority, the rule directs the court to

consider the following: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing the class action. *Id.*

### 1. Predominance

■ Here, Defendants challenge Plaintiffs' contention that common issues predominate over individual issues. Specifically, Defendants argue that "individual issues as to the availability and amount of any remedies predominate over common issues, defeating the predominance requirement[,] ... rendering the case unmanageable for trial and defeating the requirement that a class action be superior to other methods adjudicating the controversy." Doc. # 82, p. 2. The Court disagrees. Restitution in this case flows directly from Defendants' violation of NRS 482.31575 and can be determined on a class-wide basis as Defendants' conduct—the unlawful collection and retention of ACRFs—is identical in all instances. *See Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th Cir. 2013) (concluding that *Comcast Corp. v. Behrend,* —— U.S. ——, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013), requires only "that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability"). Each class member's right to restitution stems from the Defendants' violation of NRS 482.31575 and the calculation thereof will be determined by reference to the amount each class member was improperly charged. Indeed, as Plaintiffs aver, restitution can almost certainly be determined by reference to the amount each class member paid for, and Defendants were enriched by, the improper ACRF charge.[6] Finally, as the Court recognized in *Sobel,* "while damages may differ from class member to class member, this alone does not defeat class certification."

*Sobel,* 291 F.R.D. at 544; *see also Yokoyama v. Midland Nat. Life Ins. Co.,* 594 F.3d 1087, 1089 (9th Cir.2010) (class certification permitted even with "potential existence of individualized damage assessments").

Defendants' attempt to complicate the issue of determining each class member's entitlement to restitution is to no avail. First, contrary to Defendants' repeated assertion, Plaintiffs are not seeking a remedy at law. Rather, as the Court determined in evaluating the parties' respective Motions for Summary Judgment, Plaintiffs' entitlement to restitution is based in equity, not law. Doc. # 102, pp. 28–30. Second, Plaintiffs' entitlement to restitution does not depend on the "severability" clauses in their rental agreements. *See id.* at 27 n. 20. As such, whether the class members' contracts differ in this regard is immaterial. Third, a determination of the class members' entitlement to equitable restitution or the precise amount thereof does not depend on an evaluation of whether each class member received the full benefit of the services for which they paid; whether each class member paid fair market value for their rental; whether each class member would have paid a different amount if the ACRF had not been stated and what that amount would have been; the importance of price, convenience, loyalty club benefits to each class member; or the options that were available to each class member at the time of reservation and/or rental as Defendants suggest. Finally, whether Defendants' agreements with each of the various Nevada airports differ in their terms has no bearing on the Court's ability to determine restitution. As the Court has made abundantly clear, Defendants' contractual obligation to pay concession fees to the airports—whether subject to a minimum fee or not—is separate and distinct from the ACRF that Defendants impose upon short-term lessees. Therefore, the Court concludes that common questions of law or fact predominate over any individualized issues. *See Amchem,* 521 U.S. at 625, 117 S.Ct. 2231 (noting that predominance "is

---

6. Plaintiffs appear to be referencing restitution in this regard, as opposed to damages. Plaintiffs did not move for summary judgment on the issue of damages under NRS 482.31575. *See generally* Doc. # 73. Moreover, the Court determined that Plaintiffs failed to establish that they were entitled to damages and granted summary judgment in favor of Defendants on this particular issue. Doc. # 102, pp. 20–22. Accordingly, Defendants' argument in this regard is moot.

a test readily met" in consumer protection actions).

### 2. Superiority

■ Defendants further contend that because numerous unresolved individual issues predominate over class issues and present difficulties in manageability, a class action is not a superior method of adjudicating claims. Again, the Court disagrees. Because the Court rejected Defendants' argument that numerous unresolved issues predominate over individual class issues, Defendants cannot defeat superiority on this basis alone. And while damages may differ from class member to class member, this alone does not defeat class certification. *See In re Visa Check/MasterMoney Antitrust Litigation,* 280 F.3d 124, 140 (2d Cir.2001); *see also Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975). As such, the Court does not anticipate the difficulties in manageability that Defendants exhort. On the contrary, a class action is particularly appropriate where, as here, the alternative involves class members "filing hundreds of individual lawsuits that could involve duplicating discovery and costs that exceed the extent of the proposed class members' individual injuries." *Wolin v. Jaguar Land Rover North America, LLC,* 617 F.3d 1168, 1176 (9th Cir.2010). Finally, judicial economy will be served by adjudicating the claims together in this forum. Therefore, the Court finds that a class action is superior to other methods for fairly and efficiently adjudicating the present controversy.

### C. Class Definition for Vanguard [7]

Defendants argue that Plaintiffs cannot justify a June 3, 2007 start date for their proposed class of Alamo renters. The Court agrees. However, Plaintiffs amended their class definition for Vanguard to include "all persons ... who rented a car at a Nevada

---

7. The Court finds that a three-year statute of limitations applies to this action. *See* NRS 11.190(3)(a) (establishing a three-year limitations period for an action on liability created by statute). Defendants do not appear to challenge Plaintiffs' June 3, 2004 start date for their proposed class of Enterprise renters. *See* Doc. # 82, p. 16. Because the three-year statute of limitations was tolled for three years pursuant to a tolling agreement between Lee and Enterprise, the Court finds appropriate Plaintiffs' June 3,

airport ... during the period from July 22, 2007, through September 30, 2009." *See* Doc. # 96, p. 12, n. 9. Indeed, former Plaintiff Mark Singer, who allegedly rented from Alamo, and who was later replaced by Bissonette, filed his complaint on July 22, 2010.[8] *See* Doc. # 4, ¶ 5. "[T]he commencement of class action suspends the applicable statute of limitations" and, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." *Crown Cork & Seal Co. v. Parker,* 462 U.S. 345, 353–54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (quoting and citing *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)). As such, the Court is satisfied with Plaintiffs' amended proposed date range.

## IV. Conclusion

The Court finds that Plaintiffs have established that the requirements of Rule 23(a)— numerosity, commonality, typicality, and adequacy—are satisfied in the instant case. The Court further finds that a class action may be maintained pursuant to Rule 23(b)(3) because Plaintiffs have established predominance and superiority. Therefore, the Court shall grant Plaintiffs' Motion to Certify Class.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Certify Class (Doc. # 79) is GRANTED.

IT IS SO ORDERED.

---

2004 start date for their proposed class of Enterprise renters.

8. Courts routinely substitute class representatives years after a class action has been filed. *See, e.g., In re Avon Sec. Litig.,* 1998 WL 834366, at *3–4 (S.D.N.Y. Nov. 30, 1998) (certifying substitute class representatives added nearly four years after filing of the complaint in a 10b–5 case).